STATE v. W. J. MILLER.

(Filed 20 May, 1942.)

**1. Assault § 12a—Defendant held entitled to have question of self-defense presented to the jury under evidence in this case.**

The evidence, considered in the light most favorable to defendant, tended to show that defendant was an old man, in a weakened condition from a recent operation, that the prosecuting witness was a young, vigorous man weighing about 200 pounds, that in an affray in defendant's own dwelling and in his own yard defendant cut prosecuting witness in the face as witness was on defendant beating him, that the prosecuting witness walked away saying he would return and kill defendant, that defendant went into his home, procured a gun, waited on the front porch, and that as prosecuting witness with two companions approached the dwelling, cursing and making threats, defendant told them not to come any closer, and then, as they continued to approach in a threatening manner, shot and injured them while they were still 50 or 60 yards distant. *Held:* Defendant was entitled to have the question of self-defense submitted to the jury upon the evidence, and the court's charge to the effect that as a matter of law the plea of self-defense was not available to defendant upon the evidence tending to show the shooting by defendant of an unarmed man at a distance of 60 yards is error.

**2. Same: Homicide § 11—**

A defendant who quits the combat may invoke the right of self-defense upon the renewal of the affray even though he may have been at fault in bringing about the original difficulty.

**3. Same—**

A defendant may justify the use of a deadly weapon in self-defense when assaulted by a person of larger size or of greater strength, although such person may be unarmed.

**4. Same—**

A man dangerously assaulted, or menaced, in his own house is already at the wall and need not retreat.

APPEAL by defendant from *Bone, J.,* at January Term, 1942, of ROBESON. New trial.

The defendant was charged in the bill of indictment with a felonious assault upon Eugene Canady, wherein serious wounds were inflicted, with deadly weapons, to wit: a shotgun and a large knife, with intent to kill. He was acquitted of the felonious assault as charged in the bill, and convicted of an assault with a deadly weapon. From judgment of imprisonment predicated on the verdict the defendant appealed to the Supreme Court, assigning errors.

STATE v. MILLER.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*

*F. D. Hackett and L. J. Britt for defendant, appellant.*

SCHENCK, J.   The only assignments of error discussed in appellant's brief relate to the charge of the court, and since the defendant was acquitted of the felonious assault, it is left for us to consider the assignments only in so far as they relate to the offense of an assault with a deadly weapon.

The defendant makes the subject of exceptive assignments of error the following excerpt from his Honor's charge: "As I recall the evidence in this case, there is none tending to show that the prosecutor, Canady, was any closer than 60 yards to the defendant at the time of the shooting, and that there is no evidence that Canady had any weapon at the time. I, therefore, charge you that the defendant's plea of self-defense will not avail him in the matter of the shooting, and that, as a matter of law, on the evidence as shown here, that he was not justified on the ground of self-defense in doing the shooting." We are constrained to hold that these assignments should be sustained.

The charge was tantamount to an instruction that if the jury failed to convict the defendant of a felonious assault, they should under the evidence convict the defendant of an assault with a deadly weapon—in other words, directed a verdict of at least guilty of an assault with a deadly weapon, upon all of the evidence.   This we think, and so hold, was error.

While all the evidence, that of the State and that of the defendant, tended to show that the prosecuting witness, Canady, was 50 or 60 yards from the defendant at the time he fired the gun, and, nothing else appearing, may have negatived any right to fire a gun at the witness by the defendant in self-defense; but there is further evidence in the record tending to show that the defendant was an old man, 70 years of age, and was weak and only recently had been released from the hospital where he had been treated for injuries received in an automobile wreck; and that the prosecuting witness, Canady, was a large, vigorous young man, 30 years of age and weighing 200 pounds; that a short time before the firing of the gun the witness had knocked the defendant down twice, the first time in defendant's own dwelling, and the second time with a scrub broom in defendant's own yard, and had gotten on top of the defendant and was beating him when defendant cut the witness in the face with a pocket knife, thereby causing the witness to release the defendant; that the prosecuting witness then walked away from the defendant, saying that he would return and kill the defendant, that the defendant then went into his own house (his home), procured his gun, sat on the porch, and while

there the prosecuting witness, in company with two other young and vigorous men, approached the defendant in a threatening attitude, cursing and saying that they would kill the d—— old grayheaded s. o. b., that the defendant, still sitting on his porch, told them not to come any closer to him, that they continued to advance, still threatening and cursing, until they were in 50 or 60 yards of the defendant, when the defendant fired the gun twice, the shot therefrom taking effect in the bodies of the prosecuting witness and his companions.

True, the evidence is conflicting, but when construed in the light most favorable to the defendant the foregoing constitutes a substantially correct interpretation thereof, and entitled the defendant to have his plea of self-defense to the charge of an assault with a deadly weapon passed upon by the jury without a practically peremptory instruction denying such plea. If the jury should have found that both the prosecuting witness and defendant had quitted the combat when the defendant cut the witness, and one went one direction and the other another, and the defendant went to his house (home) and got his gun and sat on the porch solely for the purpose of defending himself and his home, and there waited until the prosecuting witness, with two companions, approached him in a menacing manner, threatening to kill him, and that he warned the witness to come no further toward him and his home and witness continued to threaten and advance upon him, and then, and not until then, did he fire his gun, the defendant could not be held, as a matter of law, to have forfeited his right of self-defense by willingly re-entering the combat after it had been quitted, or to have used more force than was reasonably necessary or reasonably appeared to be necessary under the circumstances. He had a right to have the issue of his having quitted the combat and his willingly having re-entered it, as well as the issue of his having used excessive force, passed upon by the jury under proper instructions by the court.

An accused may show that he quitted the combat and was therefore entitled to invoke the right of self-defense, although he may have been at fault at bringing about the original difficulty, *S. v. Garland,* 138 N. C., 675, 50 S. E., 853, and likewise may justify the use of a deadly weapon in self-defense when assaulted by a person of larger size or of greater strength, although such person may be unarmed, *S. v. Koutro,* 210 N. C., 144, 185 S. E., 682, and a man dangerously assaulted, or menaced, in his own house is already at the wall and need not retreat. *S. v. Gentry,* 125 N. C., 733, 34 S. E., 706; *S. v. Roddey,* 219 N. C., 532, 14 S. E. (2d), 526.

The case at bar is somewhat like that of *S. v. Dixon* in 75 N. C., 275, where the defendant was in his own dwelling and had ordered the deceased out, but he returned and murderously assaulted the defendant advancing on him with a deadly weapon, when the defendant shot him

and killed him.    The judge directed the jury to render a verdict of man-slaughter.    The Court in reversing the judge said it was not incumbent upon the defendant to flee.    He was in fact already at the wall.    He was in his own dwelling.

For the error indicated the defendant is entitled to a

New trial.