## STATE v. HILLARD FRANCIS.

(Filed 24 February, 1960.)

**1. Assault and Battery § 8—**

Upon evidence tending to show that the proprietor of an establishment had twice warned drunken patrons to be quiet or leave, and that on the third occasion an assault ensued in which the proprietor shot one of the patrons, it is error for the court to charge the jury that generally a person cannot repel an unarmed assailant with a pistol, since the correct rule of law is that a person on his own premises, who is free from fault in bringing on a difficulty, is under no duty to retreat in the face of a threatened assault, regardless of its character.

**2. Same—**

In the exercise of the right of self-defense a person may use such force to repel an assault as is reasonably necessary or apparently necessary to protect himself from death or great bodily harm, the reasonableness of the apprehension to be determined by the jury in accordance with the facts and circumstances as they appear to defendant at the time of the assault, and an instruction omitting the element of apparent necessity must be held for error.

APPEAL by defendant from *Pless, J.*, September Term, 1959, of McDOWELL.

This is a criminal action, tried upon a bill of indictment charging the defendant with an assault with a deadly weapon, to wit, a pistol, upon Bobby Joe Kincaid, with the felonious intent to kill and murder the said Bobby Joe Kincaid, inflicting serious injuries not resulting in death.

The State's evidence tends to show that around 10:30 on the night of 10 July 1959, Bobby Joe Kincaid, Sonny Swepson, LeRoy Jackson and Luther Fowler were at the defendant's place of business which consisted of a grocery store and a back room, separated by a swinging door, used for dancing. Kincaid and the others were in the back room and had been requested on two separate occasions to be quiet or get out. The third time the defendant went into the back room and told them to get out, LeRoy Jackson said, "We walked into your place and we will walk out, don't put your hands on us." Kincaid testified that the defendant pulled out his pistol and said, " ' I told you boys to be quiet,' and when I turned, that is when he shot me in my leg. He shot me below my hip bone in the left leg."

LeRoy Jackson, a witness for the State, testified on cross-examination, "Bobby Joe and I had been together that night. * * * We had been to a ball game. * * * After we left the ball game we started drinking. * * * After we got liquored up we thought we would go to

STATE *v.* FRANCIS.

Hillard Francis' store. * * * Yes, Bobby Joe and I were feeling pretty good along about that time. If you drink a pint you have to feel good. It was white liquor. We were talking loud. * * * In the front * * * other people were looking at television. * * * When he (Francis) told me the third time if I couldn't be quiet I could get out, I told him that I had walked in there and I would walk out. * * *"

The defendant's evidence tends to show that almost immediately after arriving at the defendant's place of business the prosecuting witness started a quarrel with one Clarence Martin, a patron in the defendant's place of business; that the defendant on two separate occasions requested Kincaid, the prosecuting witness, and others, to be quiet. When the requests were ignored, he told them they would have to be quiet or leave. Clarence Martin left. The defendant Francis took Kincaid by the arm and told him to go home, it was closing time. Kincaid said, "Keep your d... hands off of me." The prosecuting witness made a grab for the defendant who jumped out of the way. The prosecuting witness continued to advance upon the defendant who shot him in the leg and immediately thereafter called the police.

The defendant also testified that the prosecuting witness had caused trouble at his place of business on two other occasions, one time having assaulted the defendant and thrown him into a ditch just outside his door and was on top of him when his (defendant's) wife stopped him. The defendant further testified, "I know Bobby Joe's reputation for being a violent and dangerous man. He is dangerous when he is drinking. When he is sober he is as humble as he is right now."

The officer who investigated the shooting testified that Kincaid denied that he had been shot, but that he examined him and found that he had been; he further testified, "It is my opinion that he was so drunk he didn't know he had been shot."

There was a verdict of guilty of assault with a deadly weapon. Judgment was entered upon the verdict. Defendant appeals, assigning error.

*Attorney General Seawell, Assistant Attorney General McGalliard for the State.*

*Paul J. Story for defendant.*

DENNY, J. The defendant excepts to and assigns as error the following portion of his Honor's charge to the jury: "Now, in determining the degree of force a person may use you will have to take into consideration all the surrounding circumstances. Generally speaking, gentlemen of the jury, a person can't fight somebody with a pis-

tol who is making what is called a simple assault on him, that is an assault in which no weapon is being used, such as a deadly weapon or a knife or a pistol. That would render human life too cheap. It is better for a man to be the loser in a fist fight than to cut or shoot somebody. So, in determining the degree of force one may use, the law permits a person to use such force as is reasonably necessary to protect himself, and he can even go to the extent of taking human life where it is necessary to save himself from death or great bodily harm, but if he uses more force than is reasonably necessary he is answerable to the law."

We think the above portion of the charge is erroneous in two respects. (1) The instruction virtually eliminates the defendant's right of self-defense since he used a pistol in connection with defending himself against a simple assault. This Court said in *S. v. Pennell,* 231 N.C. 651, 58 S.E. 2d 341: "Ordinarily, when a person, who is free from fault in bringing on a difficulty, is attacked in his own dwelling, or home, or place of business, or on his own premises, the law imposes upon him no duty to retreat before he can justify his fighting in self-defense, — *regardless of the character of the assault.*" (Emphasis added) (2) It is erroneous in that the court failed to charge the jury with respect to the use of such force as was necessary or *apparently necessary* to protect the defendant from death or great bodily harm. The plea of self-defense rests upon necessity, real or apparent. *S. v. Fowler,* 250 N.C. 595, 108 S.E. 2d 892; *S. v. Goode,* 249 N.C. 632, 107 S.E. 2d 70; *S. v. Rawley,* 237 N.C. 233, 74 S.E. 2d 620. Or, to put it another way, one may fight in self-defense and may use more force than is actually necessary to prevent death or great bodily harm; if he believes it to be necessary and has a reasonable ground for the belief. The reasonableness of such belief or apprehension must be judged by the facts and circumstances as they appear to the party charged at the time of the assault. As pointed out by *Moore, J.,* in *S. v. Fowler, supra,* "The law does not require the defendant to show that he was actually in danger of great bodily harm." Neither does it limit the force to be used in self-defense to such force as may be *actually* necessary to save himself from death or great bodily harm. But the jury and not the party charged is to determine the reasonableness of the belief or apprehension upon which the party charged acted. *S. v. Rawley, supra,* and cases cited therein.

In the case of *S. v. Sally,* 233 N.C. 225, 63 S.E. 2d 151, *Stacy, C. J.,* speaking for the Court, said: "The defendant being in his own home and place of business where he had a right to be, and acting in de-

fense of himself and his habitation, was not required to retreat in the face of a threatened assault, regardless of its character, but was entitled to stand his ground, to repel force with force, and to increase his force, so as not only to resist, but also to overcome the assault. *S. v. Roddey,* 219 N.C. 532, 14 S.E. 2d 526; *S. v. Harman,* 78 N.C. 515; *S. v. Pennell,* 224 N.C. 622, 31 S.E. 2d 857. This, of course, would not excuse the defendant if he used excessive force in repelling the attack. *S. v. Jernigan,* 231 N.C. 338, 56 S.E. 2d 599; *S. v. Robinson,* 188 N.C. 784, 125 S.E. 617."

It is not necessary to discuss the additional assignments of error since, in our opinion, the defendant is entitled to a new trial, and it is so ordered. These additional questions may not recur on another hearing.

New trial.