Paul T. SILAS, Plaintiff,
v.
Cecil D. BOWEN, Defendant.
Civ. A. No. 66–473.

United States District Court
D. South Carolina,
Columbia Division.
Dec. 21, 1967.

Herbert W. Louthian, Cromer & Louthian, Columbia, S. C., for plaintiff.

David A. Fedor, Columbia, S. C., for defendant.

DONALD RUSSELL, District Judge.

This cause came on for trial before me without a jury on the 21st day of November, 1967, upon the issues made by the complaint and answer, and having heard testimony of witnesses and having observed their conduct and demeanor on the stand and having weighed their credibility, and having considered the exhibits, and being fully advised in the premises, in compliance with Rule 52 (a), Rules of Civil Procedure (28 U.S.C. A.), I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

## FINDINGS OF FACT

1. Plaintiff is a resident of the State of Missouri. He is a professional bas-

ketball player, affiliated with the St. Louis Hawks. At the times involved herein, however, he was engaged in his basic training as a member of the Missouri National Guard detailed for training at Fort Jackson on the outskirts of the City of Columbia, South Carolina.

2. The defendant is a resident of Columbia, South Carolina, and operates a parking lot just outside one of the main gate entrances to Fort Jackson.

3. About a week before the incident out of which this action arose, the plaintiff and another serviceman, in possession of the car of a third party, brought such car to the parking lot of the defendant and engaged a mechanic who was present at the lot, though not employed by the defendant to make certain repairs to the car. About 11 o'clock on the Saturday following, August 14, 1965, the plaintiff and his fellow-serviceman returned to defendant's parking lot and reclaimed the car, after paying the full repair charges. They then drove in the car to the City of Columbia.

4. Shortly after the plaintiff and his companion reached Columbia, they went to the home of a young woman, who thereafter accompanied them in their travels. Between the time they left the parking lot in the morning and their return late in the afternoon, they drank, according to the plaintiff, beer and had some in the car when they returned to the parking lot.

5. During that afternoon, the plaintiff and his companions noted that the repairs made to the car were not satisfactory and that the clutch thereon was still slipping. They then returned to the parking lot to demand a correction of the condition of the clutch. The plaintiff testified that it was about 1 P.M. when they arrived. However, the records at Fort Jackson conclusively establish that it was about 6 P.M. when they returned.

6. When they arrived at the parking lot, plaintiff's companion was driving. He drove into the parking lot at an excessive speed, indicating undoubtedly his anger at discovering that the car had not been properly repaired.

There seems little question that both the plaintiff and his companion were upset and distinctly annoyed by the failure to repair satisfactorily the car.

It seems equally clear that they had been drinking, even though the plaintiff denied that either of them was drunk. They had been driving around all day, had with them in the car some beer, and it is only credible to assume that they had been drinking such beer during much of the day. At least the defendant, his wife, and one disinterested witness judged them to be under the influence when they arrived at the lot.

7. According to the plaintiff, his companion got out of the car, approached the defendant who was near the door of a small office maintained by him on the lot. He demanded that his car be repaired immediately, and, when the defendant stated that the repairman did not work for him and was not then at the lot, he became insistent, whereupon defendant inquired if he were trying "to be smart." In the meantime, the plaintiff alighted from the car. He testified that he stood by the side of the car, did not approach the defendant, and took no part in the controversy between his companion and the defendant other than to state to the defendant that they wanted the car fixed at once.

This testimony of the plaintiff is vigorously denied by the defendant, his wife, who was in the small office located on the parking lot, and a disinterested witness who was only a short distance from the parties. According to their testimony, the plaintiff got out of the car along with his companion, and approached the defendant in a threatening manner, cursing and abusing him. Frightened, the defendant, after demanding without success that the plaintiff and his party leave his premises, went into his office and got a shotgun. When he returned with the shotgun, the plaintiff, according to the defendant and his witnesses, told the defendant he was not

afraid of the gun, approached the defendant and took the defendant by the shoulder with one hand, with his other hand in his pocket. The defendant claims that, frightened by the action and the language of the plaintiff and believing himself in danger of serious bodily harm, he drew back and fired the gun, not at the plaintiff but towards the ground, hoping that this would induce the plaintiff to withdraw and to cease any threat of serious bodily harm to him. Unquestionably, the defendant was not seeking to kill the plaintiff; in fact, he seems not to have intended to harm the plaintiff, only to frighten him to desist from his assault and it was a mere accident that the shot hit the plaintiff in his foot.

I cannot believe that the plaintiff conducted himself in such a restrained way as he stated. If he had not taken a far more active part in the whole controversy than he indicates—if his companion were the aggressor in the whole transaction and he largely an onlooker, as he testifies—it would seem that his companion would have been the one involved in the shotgun affair and not the plaintiff.

The testimony of the defendant and his two corroborating witnesses, one of whom, it is true, is his wife, seems more credible. According to them, the plaintiff was drinking when he arrived at the parking lot; he was quite belligerent, was cursing, refused to depart when told to leave, approached the defendant in a threatening manner and grabbed him. When the difference in the size and age of the plaintiff and defendant is considered, the situation of the defendant was such to strike fear and terror in the latter. The plaintiff was a young man, a professional athlete, robust, standing some six feet six inches, in perfect physical condition, weighing 225 to 230 pounds. The defendant, on the other hand, was of middle age, weighing about 135 pounds and standing five feet six inches. Facing a threat from the plaintiff, unable to induce him and his companions to leave his premises, already assaulted by the plaintiff, the defend-

ant, under the emergency thus created and with reasonable cause to fear serious bodily harm from an individual so much more overpowering than he, fired his shotgun, not, I am convinced, with the intent of striking the plaintiff, but for the purpose of frightening him into desisting from his attack and into leaving his premises. Unfortunately, the shot, though directed downward towards the ground, struck the plaintiff in the foot. At any rate the defendant sought to use no more force than appeared necessary under the circumstances to protect himself from serious bodily harm.

As a result of his gunshot wound, plaintiff was taken to the hospital at Fort Jackson, where, as a result of the skilled medical attention rendered him, he recovered, without any impairment in the use of his foot, save for slight discomfort in the early months after his release from the hospital.

## CONCLUSIONS OF LAW

This action, involving diversity of citizenship and more than $10,000 in amount, is within the jurisdiction of this Court.

■ The commission of an assault and battery by the defendant on the plaintiff is conceded and defendant seeks exoneration on his affirmative plea of self-defense. In testing such defense, it is necessary at the outset to note the circumstances of the parties at the scene of the controversy. The defendant, at the time of the battery, was at his place of business in the doorway to his office. The plaintiff, though initially perhaps an invitee, had become a trespasser on the defendant's premises as a result of the demand of the defendant that the former vacate the parking lot. Under these circumstances, the legal rights of the parties were:

■ 1. While entry of the defendant's premises by the plaintiff was lawful, the defendant had a plain right to order the plaintiff and his companions to depart; and, when the plaintiff refused to withdraw voluntarily after such demand, to use reasonable force to eject

them. Shramek v. Walker (1929) 152 S.C. 88, 99–100, 149 S.E. 331.

2. While this right to use reasonable force does not ordinarily encompass the use of a deadly weapon, such use will be authorized, by way of self-defense, if the conduct of the trespasser under all the circumstances is such as to produce in the mind of a person of reasonable prudence and courage an apprehension of an assault by such trespasser involving serious bodily harm. 6 Am.Jur.(2d), Sec. 173, p. 144; State v. Burnett (1947) 210 S.C. 348, 351, 42 S.E.2d 710; State v. Francis (1960) 252 N.C. 57, 112 S.E.2d 756, 758.

3. As it is stated in 100 A.L.R. 2d 1024–1025, "There is no disagreement, however, that a property owner may shoot with impunity where the incursion upon his property is also attended by a threat of personal harm to himself, his family, or others he is entitled to defend. * * * The property owner's reasonable belief that he or his family were in danger of bodily injury would appear to be the touchstone of exoneration in this area of law."

4. In determining whether there was reasonable cause and justification for the use of a deadly weapon in such a situation, all the circumstances must be considered. Accordingly, it is generally stated that a defendant, in his own place of business, where he has a right to be, as the defendant was in this case, is not required to retreat in the face of a threatened assault in order to be able to plead self-defense. State v. Francis, supra. Again, while it is well-settled that mere words, however, "abusive, insulting, vexatious or threatening", will not in themselves justify the use of a deadly weapon, such words if "accompanied by an actual offer of physical violence" reasonably warranting fear of serious bodily harm, may be an integral part of a plea of self-defense against liability for an assault and battery. 6 Am. Jur.(2d), Sec. 151, pp. 128–9; City of Gaffney v. Putnam (1941) 197 S.C. 237, 242, 15 S.E.2d 130. Moreover, in determining whether there was reasonable

cause for the apprehension of serious bodily harm, the difference in age, size, and relative physical strength of the parties to the controversy is a proper matter for consideration. 6 Am.Jur. (2d), Sec. 163, p. 137; State v. Self (1954) 225 S.C. 267, 271, 82 S.E.2d 63; cf. Roberson v. State (1961) 104 Ga.App. 382, 121 S.E.2d 710. As the Court said in State v. Floyd (1859), 51 N.C. (6 Jones) 392, "One cannot be expected to encounter a lion as he would a lamb."

5. Of course, the defendant, in order to support his plea of self-defense must not have been at fault in provoking the difficulty (State v. Davis (1922) 121 S.C. 350, 355, 113 S.E. 491) but, by demanding that the plaintiff and his companions leave his parking lot, the defendant acted within his legal rights and can in no way be regarded as provoking the difficulty in this case. As the Court stated it in State v. Burnett (1947) 210 S.C. 348, 351, 42 S.E.2d 710, "A person on his own premises has the right without any reason whatever, has the right to request or order any person to vacate his premises, and such person if so ordered or requested to leave, it is his duty to leave reasonably promptly; and, if he does not, the owner or the person in possession lawfully, has the right to use such force as may be reasonably necessary to put him off, and such person is not deemed to have brought about the physical encounter by so doing."

This plea of self-defense, if sustained, is a bar to recovery in this action. One, who has acted in justifiable self-defense "can neither be punished criminally, nor held responsible for damages in a civil action." New Orleans & N. E. R. Co. v. Jopes (1891) 142 U.S. 18, 24, 12 S.Ct. 109, 111, 35 L.Ed. 919; Evans v. Hughes (D.C.N.C.1955) 135 F. Supp. 555, 558.

In my opinion, the defendant has made out his plea of self-defense under the facts and applicable law, as I have found and concluded. He acted in reasonable apprehension of serious bodily

harm and to repel what he reasonably feared would be a serious and dangerous assault by a person of overpowering size.

Let judgment be entered for defendant, and

It is so ordered.