STATE OF NORTH CAROLINA v. CHARLES AUSTIN PEARSON

No. 115

(Filed 26 June 1975)

**Homicide § 28— self-defense — instructions — deadly force to quell simple assault**

In a homicide prosecution wherein defendant contended he shot decedent while attempting to repel an assault on him by decedent and two others, the trial court did not err in instructing the jury that a person may not "normally" avail himself of self-defense when he has used deadly force to quell an assault by someone who has no deadly weapon but that the jury could find defendant acted in self-defense if it was "satisfied that because of the number of attackers or their size or the fierceness of the attack or all three . . . defendant believed from the circumstances that he was in danger of death or suffering great bodily harm and that the belief was reasonable under the circumstances as they appeared to him at that time."

ON *certiorari* to review the decision of the Court of Appeals reported in 24 N.C. App. 410, 210 S.E. 2d 887 (1975) (opinion by Martin, J., Britt and Hedrick, J.J., concurring), which found no error in defendant's trial before *Winner, S.J.*, at the 1 April 1974 Session of CALDWELL County Superior Court.

Defendant was tried upon a bill of indictment charging him with the first-degree murder of William G. Morgan on 29 September 1973. Defendant entered a plea of not guilty. Following the presentation of all the evidence, the court instructed the jury that they could find defendant guilty of either first-degree murder, second-degree murder, voluntary manslaughter or involuntary manslaughter, or not guilty. The jury found defendant guilty of voluntary manslaughter and Judge Winner entered judgment sentencing defendant to a term in prison of "Not less than sixteen (16) nor more than twenty (20) years."

The uncontroverted facts are as follows:

On the evening of 28 September 1973 defendant, his wife, and his sister attended a dance at the Cedar Rock Country Club, Lenoir, North Carolina. Decedent (hereinafter referred to as Morgan) along with his wife and two other couples also attended the dance. About 1:00 a.m. the dance terminated and all of these parties walked out to the parking lot and got in their respective cars. Defendant's wife, who had apparently been the life of the party, was not ready to leave at this particular time. Accord-

ingly, as defendant's vehicle approached the parking lot exit, his wife jumped out of the car and headed back towards the clubhouse. Defendant immediately stopped the car (in the vicinity of the exit), jumped out, ran after his wife, and grabbed her by the hair and by the arm. A struggle ensued as defendant attempted to get his wife back into the car. During the course of this struggle, Morgan's vehicle approached the exit area. Morgan had two male passengers with him (Charles Miller and Leo King). Their wives had previously left in another car. From this point forward, the evidence is highly contradictory.

The State's evidence, summarized except where quoted, tended to show the following:

Defendant's vehicle completely blocked the exit and Morgan was forced to bring his car to a complete stop. Defendant looked at the Morgan vehicle and yelled, "Get the damn headlights out of my eyes." Shortly thereafter, defendant approached the driver's door and Morgan asked him what was the trouble. Defendant told Morgan it was none of his "damn business." At this juncture, Morgan got out of his car and he and defendant began to fight. Defendant subsequently knocked Morgan to the ground and began kicking him. Charles Miller, one of the passengers in Morgan's car, intervened. Miller apparently got the best of defendant. At this point, both Morgan and Miller got back into the Morgan vehicle. Defendant then came up to the car window, pistol in hand, and told Morgan: "I'm going to shoot you." Defendant then forced Morgan to get out of the car, stalked him around the parking lot for several minutes, and eventually shot him in the head.

Defendant's evidence, summarized except where quoted, tended to show the following:

Defendant was trying to get his wife back into the passenger's side of his car when three men, without provocation, stopped their vehicle and commenced to "beat the hell out of him." One of them said: "Let's just stomp the son of a bitch's guts out." During the course of this altercation, defendant was able to get to his car where he had a .45 caliber automatic pistol between the two back rests of the front seat (defendant stated that he had previously given the pistol to his sister). As defendant left the car, he stuck the pistol up in the air and fired a single warning shot. Thereafter, he said: "You son of a bitches, get off of me." Morgan and the others did not heed

this warning and defendant started using the pistol as a "club," trying to hit anything that was near him. While attempting to hit Morgan with the pistol, it somehow went off. Morgan hit the ground. Defendant immediately got back in his car, threw the pistol on the seat, and drove directly to the Lenoir police station. Defendant was an assistant to the Lenoir City Manager. Defendant called Captain Dewey Triplett of the Lenoir Police Department and made a statement substantially similar to the facts above summarized.

*Attorney General Rufus L. Edmisten, by Associate Attorney Archie W. Anders, for the State.*

*Bailey, Brackett & Brackett, by Allen A. Bailey and Kermit D. McGinnis, for defendant appellant.*

COPELAND, Justice.

In his supplemental brief, defendant addresses himself primarily to the trial court's charge as it related to self-defense.

After charging the jury correctly as to the grounds of self-defense, Judge Winner gave the following instruction:

> *"Now, members of the jury, under the law of this State a person may not normally avail himself of self-defense when he has used deadly force to quell an assault or attack by someone who does not have a deadly weapon.*

> "However, if you are satisfied that because of the number of attackers or their size or the fierceness of the attack or all three of those things put together the defendant believed from the circumstances that he was in danger of death or suffering great bodily harm and that the belief was reasonable under the circumstances as they appeared to him at that time and that the force was not excessive and that the defendant was not the aggressor, then the defendant would have satisfied you of self defense." (Emphasis supplied.)

At approximately 8:25 p.m. (Saturday night) the jury returned to the courtroom and asked the court to restate the elements of first-degree murder, second-degree murder, voluntary manslaughter, involuntary manslaughter, and self-defense.

State v. Pearson

During the course of this subsequent charge, Judge Winner instructed the jurors as follows:

"To excuse the killing entirely on the grounds of self defense the defendant must satisfy you of four things. First, that it appeared to the defendant and he believed it to be necessary to shoot W. G. Morgan in order to save himself from death or great bodily harm. Second, that the circumstances as they appeared to the defendant at the time were sufficient to create such a belief as in the first part, the first element, in the minds of a person of ordinary firmness.

"It is for you, the jury, to determine the reasonableness of the defendant's belief in the circumstances as they appeared to him at that time. In making this determination you should consider the circumstances as you find them to have existed from the evidence, including size, age, strength of the defendant as compared to W. G. Morgan; the fierceness of the assault, if any, upon the defendant; whether or not W. G. Morgan had a weapon in his possession. And also although I did not include this in this part of the charge the first time, you may consider in determining this the number of assailants, if you find there were any, who attacked the defendant.

"Third, that the defendant was not the aggressor. If he voluntarily and without provocation entered the fight he was the aggressor, unless he thereafter attempted to abandon the fight and gave notice to W. G. Morgan that he was doing so either by word or act. One enters the fight voluntarily if he uses toward his opponent abusive language which considering all the circumstances is calculated and intended to bring on a fight. And, fourth, that the defendant did not use excessive force, that is, more force than reasonably appeared to be necessary to the defendant at the time. Again, it is for you, the jury, to determine the reasonableness of the force used by the defendant and under all the circumstances as they appeared to him at that time.

"*If you will remember at this point I charged you that normally a person cannot use deadly force and avail himself of self-defense if the other side did not have a deadly weapon.* You want me to go over that?" (Emphasis supplied.)

As a result of the question propounded by the court, the following transpired:

"FOREMAN: I think that is sufficient, Your Honor.

"MR. BAILEY: May I approach the bench?

"THE COURT: Yes, sir.

"(Conference at the bench)

"THE COURT: I think I'd better go over it all."

Following the "bench conference" between the court and defendant's attorney, the court instructed the jury, in pertinent part, as follows:

> "*A person under the law may not normally avail himself of self defense when he has used deadly force to quell an assault by someone who has no deadly weapon. In other words, a simple assault within the law.* However, if you are satisfied that because of the number of attackers or their size or the fierceness of the attack the defendant believed from the circumstances that he was in danger of death or suffering great bodily harm and that the belief was reasonable under the circumstances as they appeared to him at that time and that the force was not excessive and that the defendant was not the aggressor and that the defendant would have still satisfied you of self defense. If you find the defendant acted in self defense he would not be guilty." (Emphasis supplied.)

After receiving all of the above instructions, the jury retired and shortly thereafter returned with a verdict finding defendant guilty of voluntary manslaughter.

Defendant strongly contends that the trial court committed prejudicial error when it instructed the jury on three separate occasions that "a person under the law may not normally avail himself of self defense when he has used deadly force to quell an assault by someone who has no deadly weapon." We find no merit in this contention.

In *State v. Deck*, 285 N.C. 209, 203 S.E. 2d 830 (1974), this Court, in an opinion by Justice Branch, stated the general rules applicable to the defense of self-defense as follows:

> "The right to act in self-defense is based upon necessity, real or apparent, and a person may use such force as

State v. Pearson

is necessary or apparently necessary to save himself from death or great bodily harm in the lawful exercise of his right of self-defense. A person may kill even though it be not necessary to kill to avoid death or great bodily harm if he believes it to be necessary and he has reasonable grounds for such belief. The reasonableness of his belief is to be determined by the jury from the facts and circumstances as they appeared to the accused at the time of the killing. *State v. Gladden,* 279 N.C. 566, 184 S.E. 2d 249; *State v. Jennings,* 276 N.C. 157, 171 S.E. 2d 447; *State v. Kirby,* 273 N.C. 306, 160 S.E. 2d 24." *Id.* at 214-15, 203 S.E. 2d at 834. *See generally* 4 Strong, N. C. Index 2d, Homicide § 28 (1968).

In considering these general rules it is particularly important to keep in mind the distinction between deadly force (force intended or likely to cause death or great bodily harm) and nondeadly force (force neither intended nor likely to do so). It is also important to distinguish force which is reasonable from that which is unreasonable. One commentator has differentiated between the two as follows:

". . . Deadly force and reasonable force are neither mutually exclusive nor collectively exhaustive. Deadily force is unreasonable if nondeadly force is obviously sufficient to avert the threatened harm, but may be entirely reasonable under other circumstances. And even nondeadly force is unreasonable if it is obviously and substantially in excess of what is needed for the particular defense." R. Perkins, Criminal Law 993 (2d ed. 1969) (hereinafter cited as *Perkins*).

Another distinction applicable to the deadly force-nondeadly force dichotomy is made between assaults with felonious intent (use of deadly force) and assaults made without felonious intent (use of nondeadly force). In the latter the person assaulted may not stand his ground and kill his adversary, if there is any way of escape open to him, although he is permitted to repel force by force and give blow for blow. *See, e.g., State v. Anderson,* 230 N.C. 54, 51 S.E. 2d 895 (1949); *State v. Ellerbe,* 223 N.C. 770, 28 S.E. 2d 519 (1944); *State v. Bryant,* 213 N.C. 752, 197 S.E. 530 (1938); *State v. Johnson,* 184 N.C. 637, 113 S.E. 617 (1922). In the former, however, where the attack is made with murderous intent (i.e., deadly force), the person attacked is under no obligation to retreat, but may stand his

ground and kill his adversary, if need be. *See, e.g.,* cases above cited. These retreat rules ordinarily have no application, however, when a person, who is free from fault in bringing on a difficulty, is attacked in his own dwelling, home, place of business, or on his own premises. In this type situation the law imposes no duty to retreat as a condition to exercising the right of self-defense—regardless of the character of the assault. *See, e.g., State v. Pennell,* 231 N.C. 651, 58 S.E. 2d 341 (1950). A person assaulted in his home or place of business is said to already be "at the wall" and therefore need not retreat. *See, e.g., State v. Miller,* 221 N.C. 356, 20 S.E. 2d 274 (1942).

A corollary of the above rules is the general principle, heretofore recognized by this Court, that deadly force is not privileged against nondeadly force. *See, e.g., State v. Watkins,* 283 N.C. 504, 196 S.E. 2d 750 (1973); *State v. Ellerbe, supra; State v. Dills,* 196 N.C. 457, 146 S.E. 1 (1929); *State v. Gaddy,* 166 N.C. 341, 81 S.E. 608 (1914); *State v. Hill,* 141 N.C. 769, 53 S.E. 311 (1906). *See also State v. Winford,* 279 N.C. 58, 181 S.E. 2d 423 (1971) (negative inference). But, even this rule is qualified where there is a great disparity in strength between the defendant and his assailant, or where the defendant is attacked by more than one assailant. Under these circumstances, death or great bodily harm is possible without the use of any weapons by the assailant or the assailants, and the defendant therefore may be justified in employing deadly force to repel such an attack. *See, e.g., State v. Gaddy, supra; State v. Hill, supra. See generally* Perkins, *supra,* at 993-1018.

In *State v. Hill, supra,* the above rule was well stated by Justice Hoke as follows:

> "It is true, as a general rule, or under ordinary conditions, that the law does not justify or excuse the use of a deadly weapon to repel a simple assault. This principle does not apply, however, where from the testimony it may be inferred that the use of such weapon was or appeared to be reasonably necessary to save the person assaulted from great bodily harm—such person having been in no default in bringing on or unlawfully entering into the difficulty. . . .

> "In such case a defendant's right of self-defense is usually a question for the jury; and it is not always necessary to the existence of this right that the first assault

should be with a deadly weapon. It may, in exceptional instances, arise when the fierceness of this assault, the position of the parties and the great difference in their relative sizes or strength show that the danger of great bodily harm is imminent. . . . " 141 N.C. at 771, 53 S.E. at 311.

In *State v. Gaddy, supra,* this Court, in an opinion by Justice Allen, found no error in the following charge (taken from the *Hill* case, *supra)*:

" 'It [right of self-defense] may, in exceptional instances, arise when the fierceness of this assault, the position of the parties, and the great difference in their relative sizes or strength show that the danger of great bodily harm is imminent, although under ordinary conditions the law does not excuse the use of a deadly weapon to repel a simple assault, this principle does not apply where from the testimony it may be inferred that the use of such weapon was or appeared to be reasonably necessary to save the person assaulted from great bodily harm, such person having been in no default in bringing on or unlawfully entering into the fight. In such case the defendant's right of self-defense is a question for the jury. It is not necessary to the existence of this right that the defendant should have been assailed with a deadly weapon. The jury may consider the fierceness of the assault upon him, the position of the parties, and the difference in their relative size and strength, with a view of determining whether, under all the circumstances, the defendant was reasonably led to believe and did believe that he was in danger of being killed or of receiving serious bodily harm at the hands of the deceased.' " 166 N.C. at 348, 81 S.E. at 611.

Suffice it to say, the charge complained of by defendant in the instant case is in accord with the rule of law applicable under these facts and is virtually identical to the language used by and approved by this Court in *Hill* and *Gaddy*. Defendant strongly contends, however, that the instant charge is erroneous under authority of *State v. Francis,* 252 N.C. 57, 112 S.E. 2d 756 (1960). In *Francis* the defendant was charged in a bill of indictment with felonious assault (now G.S. 14-32(a)). The alleged assault occurred in the defendant's place of business. In

charging the jury on the law of self-defense, Judge Pless gave the following instruction:

" . . . 'Now, in determining the degree of force a person may use you will have to take into consideration all the surrounding circumstances. *Generally speaking, gentlemen of the jury, a person can't fight somebody with a pistol who is making what is called a simple assault on him, that is an assault in which no weapon is being used, such as a deadly weapon or a knife or a pistol. That would render human life too cheap. It is better for a man to be the loser in a fist fight than to cut or shoot somebody.* So, in determining the degree of force one may use, the law permits a person to use such force as is reasonably necessary to protect himself, and he can even go to the extent of taking human life where it is necessary to save himself from death or great bodily harm, but if he uses more force than is reasonably necessary he is answerable to the law.' " *Id.* at 58-59, 112 S.E. 2d at 757. (Emphasis supplied.)

In awarding the defendant in *Francis* a new trial, this Court, in an opinion by Justice Denny (later Chief Justice) stated:

"We think the above portion of the charge is erroneous in two respects. (1) The instruction virtually eliminates the defendant's right of self-defense since he used a pistol in connection with defending himself against a simple assault. This Court said in *State v. Pennell,* 231 N.C. 651, 58 S.E. 2d 341: 'Ordinarily, when a person, who is free from fault in bringing on a difficulty, is attacked in his own dwelling, or home, or place of business, or on his own premises, the law imposes upon him no duty to retreat before he can justify his fighting in self-defense—*regardless of the character of the assault.*' (Emphasis added.) (2) It is erroneous in that the court failed to charge the jury with respect to the use of such force as was necessary or *apparently necessary* to protect the defendant from death or great bodily harm. The plea of self-defense rests upon necessity, real or apparent. [Citations omitted.] Or, to put it another way, one may fight in self-defense and may use more force than is actually necessary to prevent death or great bodily harm, if he believes it to be necessary and has a reasonable ground for the belief. The reasonableness of such belief or apprehension must be judged by the facts

State v. Pearson

and circumstances as they appear to the party charged at the time of the assault." *Id.* at 59, 112 S.E. 2d at 758.

We agree with defendant that the italicized portion of the charge in *Francis* was error *under the facts of that case.* However, under the facts of the instant case such charge was a correct statement of the law. The distinguishing factors involve the relationship of the various retreat rules to the type of force employed by the assailant. For example, if a person is attacked in his own dwelling, home, place of business, or on his own premises, and is also free from fault in bringing on the difficulty, he is under no duty to retreat, whether the assailant is employing deadly force or nondeadly force. Of course, in order to justify the use of deadly force under these circumstances the person attacked must believe it to be necessary and must have a reasonable ground for such belief. On the other hand, where the person attacked is not in his own dwelling, home, place of business, or on his own premises, then the degree of force he may employ in self-defense is conditioned by the type of force used by his assailant. If the assailant uses nondeadly force, then generally deadly force cannot be used by the person attacked; provided there is no great disparity in strength, size, numbers, etc., between the person attacked and his assailant. However, if the assailant uses deadly force, then the person attacked may stand his ground and kill his attacker if he believes it to be necessary and he has a reasonable ground for such belief.

Applying the above rules to the *Francis* case and to our case, the following distinguishing factors become apparent. (1) The defendant in *Francis* was in his own place of business. Hence, he was under no duty to retreat as a condition to exercising the right of self-defense—regardless of the character of the assault (i.e., deadly or nondeadly). It was therefore error to charge the jury that generally speaking he could not employ deadly force to repel the attack. (2) On the other hand, defendant in our case was not attacked in his own dwelling, home, place of business, or on his own premises. He was attacked in the parking lot of the Cedar Rock Country Club. Also, there was no evidence that any of his assailants assaulted him with deadly force. Hence, he was not privileged to use deadly force to repel the attack, unless, due to the great disparity in strength, size, numbers, etc., between him and his assailants he believed, and had a reasonable basis for such belief, that he would be subjected to death or great bodily harm if he did not defend him-

self with deadly force. It was therefore not error to charge the jury that "normally" he could not use deadly force unless the jury was "satisfied that because of the number of attackers or their size or the fierceness of the attack on all three . . . defendant believed from the circumstances that he was in danger of death or suffering great bodily harm and that the belief was reasonable under the circumstances as they appeared to him at that time. . . . "

Accordingly, for the reasons above stated, we hold that the portion of the judge's charge complained of was not error but constituted a clear, accurate, and full statement of the law of this State. Defendant's contention is therefore rejected.

Defendant brought forward numerous assignments of error in his brief to the Court of Appeals. However, in his supplemental brief to and oral arguments before this Court he only pursued the assignment and exceptions related to the instructions on self-defense. We have answered this issue in favor of the State. We have closely examined all the other assignments and approve of the action taken by the North Carolina Court of Appeals in connection therewith.

In the final analysis the evidence in this case was in sharp conflict. The verdict rested with the credibility of the witnesses in the eyes of the jurors. The jury, after receiving a proper charge from Judge Winner on the law of self-defense as applied to these particular facts, has spoken. The decision of the North Carolina Court of Appeals is therefore affirmed.

Affirmed.