IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-883

 Filed: 20 June 2017

Mecklenburg County, No. 14CRS20599, 20600

STATE OF NORTH CAROLINA, Plaintiff,

 v.

OMAR COOK, Defendant.

 Appeal by Defendant from judgments entered 9 February 2016 by Judge Hugh

B. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 9

March 2017.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Lars F.
 Nance, for the State.

 Ann B. Petersen for the Defendant.

 DILLON, Judge.

 Omar Cook (“Defendant”) appeals from two convictions for felonious assault

with a firearm on a law enforcement officer. For the following reasons, we find no

error in Defendant’s trial.

 I. Background

 In February 2015, uniformed officers executed a search warrant at Defendant’s

residence while Defendant was upstairs in his bedroom. Defendant’s family members

resisted as the officers gained entry and secured the downstairs.
 STATE V. COOK

 Opinion of the Court

 Two officers proceeded upstairs, announcing that they were there to serve a

warrant. One officer encountered Defendant’s closed bedroom door. The officer

announced that he was a police officer and that he was going to kick in the door. The

officer’s foot went through the door on the first kick. Defendant fired two gunshots

from inside the bedroom through the still-unopened door and the drywall adjacent to

the door, narrowly missing the officer.

 The officers eventually entered Defendant’s room where they found a shell

casing and noticed an open window. Officers followed footprints in the snow below

the open window and found Defendant barefoot and wearing undershorts. Defendant

was taken into custody. A handgun was recovered near the residence with DNA that

matched Defendant’s DNA profile.

 The jury found Defendant guilty of two counts of assaulting a law enforcement

officer with a firearm. Defendant timely appealed.

 II. Summary

 In his sole argument on appeal, Defendant contends that the trial court erred

by denying his request for a self-defense instruction. He argues that he was entitled

to the instruction based on his testimony which tended to show that:

  Defendant was asleep when the officer arrived at his bedroom
 door.

  His girlfriend woke him up, he heard loud banging on his bedroom
 door and saw a foot come through the door “a split second” after
 waking up.

 -2-
 STATE V. COOK

 Opinion of the Court

  He did not hear the police announce their presence but did hear
 his mother and brother “wailing” downstairs.

  He was “scared for [his] life . . . thought someone was breaking in
 the house . . . hurting his family downstairs and coming to hurt
 [him] next.”

  He stated that when he fired his weapon he had “no specific
 intention” and was “just scared.”

Because Defendant essentially testified that he did not intend to shoot anyone when

he fired his gun, we are compelled by Supreme Court precedent to conclude that he

was not entitled to a self-defense instruction, notwithstanding the fact that there

may have been other evidence from which the jury could infer that Defendant did

intend to shoot the officer, e.g., that he fired the shots towards the bedroom door.

Accordingly, we find no error.

 III. Analysis

 Generally, the trial judge must instruct the jury regarding all substantial

features of a case. State v. Higginbottom, 312 N.C. 760, 764, 324 S.E.2d 834, 835

(1985). “All defenses[,] [including self-defense,] rising from the evidence presented at

trial constitute substantive features of a case and therefore warrant the trial court’s

instruction thereon.” State v. Loftin, 322 N.C. 375, 381, 368 S.E.2d 613, 617 (1988).

Further, in determining whether a defendant is entitled to a self-defense instruction,

the evidence must be viewed “in the light most favorable to the defendant,” State v.

Bush, 307 N.C. 152, 159, 297 S.E.2d 563, 568 (1982) (emphasis added), and the

 -3-
 STATE V. COOK

 Opinion of the Court

determination shall be based on evidence offered by the defendant and the State. See

State v. Deck, 285 N.C. 209, 215, 203 S.E.2d 830, 834 (1974) (self-defense instruction

required based on evidence offered by the State).

 Here, Defendant essentially argues that he was entitled to an instruction on

self-defense based on his testimony that he was “scared for [his] life” when he fired

the shots. We note, however, that Defendant also testified that he did not take aim

at or otherwise have any specific intent to shoot the “intruder” when he fired the

shots:

 [Defense Counsel]. Now, when you reached for the firearm,
 what was your intention?

 [Defendant]. I really didn’t have no specific intention. I
 was just scared. I didn’t know what was going on. I was
 scared.
 ...

 Q. And what did you do with [the firearm] after you pulled
 it out from under the mattress?

 A. I turned my head and discharged it.
 ...

 Q. Were you looking where you were shooting?

 A. No, sir.
 ...

 Q. When you discharged your weapon, were you trying to
 kill someone?

 A. No, sir.

 -4-
 STATE V. COOK

 Opinion of the Court

 Our Supreme Court has stated that “[t]he right to act in self-defense is based

upon necessity, real or apparent, and a person may use such force as is necessary or

apparently necessary to save himself from death or great bodily harm in the lawful

exercise of his right of self-defense.” State v. Pearson, 288 N.C. 34, 38-39, 215 S.E.2d

598, 602 (1975). It may be argued that, based on Pearson, Defendant was entitled to

a self-defense instruction if he reasonably believed that the firing of warning shots

would be sufficient to repel a potentially deadly attack.

 However, our Supreme Court has repeatedly held that a defendant who fires a

gun in the face of a perceived attack is not entitled to a self-defense instruction if he

testifies that he did not intend to shoot the attacker when he fired the gun. For

instance, in State v. Williams, 342 N.C. 869, 872, 467 S.E.2d 392, 393 (1996), the

Court found no error in the trial court’s denial of the defendant’s request for a self-

defense instruction where he testified that he did not intend to shoot the attacker but

rather was simply firing “warning shots” into the air. Id. The Williams Court stated

that “perfect self-defense” is available only if “it appeared to defendant that he

believed it to be necessary to kill the [attacker] in order to save himself from death or

great bodily harm,” and that, therefore, “[t]he defendant [was] not entitled to an

instruction on self-defense while still insisting that he did not intend to fire the pistol

at anyone, that he did not intend to shoot anyone and that he did not know anyone

had been shot. . . . The defendant’s own testimony, therefore, disproves [that he

 -5-
 STATE V. COOK

 Opinion of the Court

believed it was necessary to kill when he fired the shot].” Id. at 873, 467 S.E.2d at

394.

 Based on Williams, a person under an attack of deadly force is not entitled to

defend himself by firing a warning shot, even if he believes that firing a warning shot

would be sufficient to stop the attack; he must shoot to kill or injure the attacker to

be entitled to the instruction. This is true even if there is, in fact, other evidence from

which a jury could have determined that the defendant did intend to kill the attacker.

Specifically, in Williams, while sustaining the trial court’s ruling not to give a self-

defense instruction, the Supreme Court sustained the defendant’s conviction of first-

degree murder based on premeditation and deliberation – a conviction which can only

stand if there is evidence from which the jury could conclude that the defendant had

the intent to kill. Id. at 874, 467 S.E.2d at 395.

 Further, in State v. Lyons, the Supreme Court addressed a factual scenario

very similar to the facts in the present case. State v. Lyons, 340 N.C. 646, 459 S.E.2d

770 (1995). In Lyons, an officer knocked on the defendant’s front door to serve a

search warrant. The defendant fired shots through the front door, killing the officer.

The defendant testified that he did not hear the officer announce his identity but only

heard loud banging on his front door, that he became scared that he was being robbed,

and that he fired shots in the direction of the front door. Our Supreme Court held

that the trial court did not err in refusing to instruct on self-defense based on the

 -6-
 STATE V. COOK

 Opinion of the Court

defendant’s testimony that he did not intend to hit anyone with his gunshots, id. at

662, 459 S.E.2d at 778, but otherwise held that there was sufficient evidence to

convict the defendant of first-degree murder based on a finding that he “acted with

the specific intent to kill after premeditation and deliberation.” Id. at 658, 459 S.E.2d

at 777. See also State v. Reid, 335 N.C. 647, 671, 440 S.E.2d 776, 789 (1994)

(upholding first-degree murder conviction, holding that self-defense instruction was

not warranted where the defendant testified that he did not aim at anyone but only

shot at the floor); State v. Hinnant, 238 N.C. App. 493, 497, 768 S.E.2d 317, 320 (2014)

(self-defense instruction is not available where the defendant testifies that he did not

intend to shoot the attacker when he fired the gun).

 In sum, based on Supreme Court precedent, where a defendant fires a gun as

a means to repel a deadly attack, the defendant is not entitled to a self-defense

instruction where he testifies that he did not intend to shoot the attacker.

 The dissent states that N.C. Gen. Stat. § 14-51.2, codifying the “castle

doctrine,” warrants reversal; contending that, under the statute, there is a rebuttable

presumption that Defendant held a reasonable fear of imminent death or serious

bodily harm. N.C. Gen. Stat. § 14-51.2 is an affirmative defense provided by statute

which supplements other affirmative defenses that are available under our common

law. N.C. Gen. Stat. § 14-51.2(g) (“This section is not intended to repeal or limit any

other defense that may exist under the common law.”). Defendant, however, never

 -7-
 STATE V. COOK

 Opinion of the Court

cited N.C. Gen. Stat. § 14-51.2 nor does he make any argument concerning that

defense in his brief. Therefore, our Court should not base our resolution of this appeal

on that statute. N.C. R. App. P. 28. We can only base our resolution of Defendant’s

appeal on the defense he argues: self-defense.

 In any event, assuming Defendant had properly preserved an argument based

on N.C. Gen. Stat. § 14-51.2, we do not believe that the defense was available in this

case, based on the reasoning of our Supreme Court in the cases cited above. Neither

the common law self-defense theory nor the N.C. Gen. Stat. § 14-51.2 defense theory

applies where the defendant did not hold a reasonable fear of imminent death or

serious bodily injury. In the common law self-defense context, the defendant bears

the burden of showing that he held this reasonable fear. However, in a common law

self-defense context, even where there is sufficient evidence to meet the defendant’s

burden that he intended to shoot the attacker, Supreme Court precedent instructs

that the defendant is not entitled to the instruction if he testifies that he did not

intend to shoot the attacker because in that scenario, the defendant’s own words show

that he did not believe he was in reasonable fear of imminent harm. Applying this

same reasoning to the N.C. Gen. Stat. § 14-51.2 context, a defendant who testifies

that he did not intend to shoot the attacker is not entitled to an instruction under

N.C. Gen. Stat. § 14-51.2 because his own words disprove the rebuttable presumption

that he was in reasonable fear of imminent harm.

 -8-
 STATE V. COOK

 Opinion of the Court

Accordingly, we conclude that Defendant received a fair trial, free from error.

NO ERROR.

Judge MURPHY concurs by separate opinion.

Judge STROUD dissents by separate opinion.

 -2-
 No. COA16-883 - State v. Cook

 MURPHY, Judge, concurring

 Judge Stroud’s dissent reflects a stronger policy that more accurately

represents what most citizens would believe our law to be and what I believe self-

defense law should be in our state. However, I must concur in the opinion authored

by Judge Dillon as it accurately reflects what our current law is in this matter.

 Under the holdings of our Supreme Court, it is unlawful for a person to use a

warning shot as a means of self-defense no matter how reasonable a warning shot

may be instead of shooting to kill one’s attacker. While I encourage the Supreme

Court to reverse our ruling today and accept the reasoning of the dissent, we

are bound by precedent to rule that Defendant was not entitled to an instruction on

self-defense.
No. COA16-883 – State v. Cook

STROUD, Judge, dissenting.

 Because I believe that the majority failed to rely on the dispositive law in this

case, North Carolina General Statute § 14-51.2, I dissent.

 While the State may characterize defendant’s testimony in a slightly different

way, when considering whether to provide the self-defense instruction to the jury the

trial court was required to view defendant’s evidence as true. See State v. Whetstone,

212 N.C. App. 551, 554–55, 711 S.E.2d 778, 781–82 (2011) (“Our Supreme Court has

held when there is evidence from which it may be inferred that a defendant acted in

self-defense, he is entitled to have this evidence considered by the jury under proper

instruction from the court. Where there is evidence that defendant acted in self-

defense, the court must charge on this aspect even though there is contradictory

evidence by the State or discrepancies in defendant’s evidence. Thus, if the

defendant’s evidence, taken as true, is sufficient to support an instruction for self-

defense, it must be given even though the State’s evidence is contradictory. The

evidence is to be viewed in the light most favorable to the defendant.” (citations,

quotation marks, and brackets omitted)). Defendant testified that in the evening

prior to the incident from which this case arose, he and his girlfriend were watching

movies in his upstairs locked back bedroom and smoked marijuana; he felt tired

because it had been “a long day[,]” and he had shoveled snow out of his driveway. In

the morning, he was awakened by his girlfriend to hear his mother and brother
 STATE V. COOK

 STROUD, J., dissent

“wailing” and to see a foot coming through his door. Defendant did not hear anyone

“announce ‘police’” or request for him to open the door. Defendant picked up his gun,

shot it, jumped out the window, and ran to his neighbor’s house “screaming for help”

and telling his neighbor to “call the police” because “someone [was] trying to kill [him]

and [his] family.”

 Defendant’s only issue on appeal is whether the trial court erred in failing to

instruct the jury on self-defense upon his request. The applicable statute to this case

is North Carolina General Statute § 14-51.2, which codified the “castle doctrine[,]” a

name which stems from the colloquialism “that one’s home is one’s castle.” State v.

Stevenson, 81 N.C. App. 409, 412, 344 S.E.2d 334, 335 (1986) (“The ‘castle doctrine’ is

derived from the principle that one’s home is one’s castle and is based on the theory

that if a person is bound to become a fugitive from her own home, there would be no

refuge for her anywhere in the world.”) While the castle doctrine is a legal theory in

the nature of self-defense, it is a separate and distinct analysis from simple self-

defense against a threat of serious or deadly force because under the castle doctrine

the person is not just defending himself but also defending himself in the place he

has the right to be and feel safe; the castle doctrine is thus the synthesis of self-

defense and the defense of habitation. See generally Catherine L. Carpenter, Of the

Enemy Within, the Castle Doctrine, and Self-Defense, 86 Marq. L. Rev. 653, 665–69

(2003) (“[T]he Castle Doctrine sits at the intersection of two distinct but interrelated

 2
 STATE V. COOK

 STROUD, J., dissent

defenses: defense of habitation and self-defense. Defense of habitation is primarily

based on the protection of one’s dwelling or abode, and stems from the common law

belief that a man’s home is his castle. Essentially, the defense provides that the use

of deadly force may be justified to prevent the commission of a felony in one’s dwelling

. . . . Whereas in defense of habitation, deadly force may be used to prevent the

commission of an atrocious felony, in self-defense, deadly force may be used when

necessary in resisting or preventing an offense which reasonably exposes the person

to death or serious bodily harm. The contemplated need for self-defense in the home,

therefore, is in some sense broader--it can be an external or internal attack--but it is

narrower in its requirement that the attacker intends death or serious bodily harm.”

(footnotes omitted)).

 Turning to our own statutory version of the castle doctrine, North Carolina

General Statute § 14-51.2(b) provides that

 [t]he lawful occupant of a home, motor vehicle, or
 workplace is presumed to have held a reasonable fear of
 imminent death or serious bodily harm to himself or herself
 or another when using defensive force that is intended or
 likely to cause death or serious bodily harm to another if
 both of the following apply:
 (1) The person against whom the defensive force
 was used was in the process of unlawfully and
 forcefully entering, or had unlawfully and
 forcibly entered, a home, motor vehicle, or
 workplace, or if that person had removed or
 was attempting to remove another against
 that person’s will from the home, motor
 vehicle, or workplace.

 3
 STATE V. COOK

 STROUD, J., dissent

 (2) The person who uses defensive force knew or
 had reason to believe that an unlawful and
 forcible entry or unlawful and forcible act was
 occurring or had occurred.

N.C. Gen. Stat. § 14-51.2 (2013) (emphasis added). Thus, North Carolina General

Statute § 14-51.2 gives the defendant the benefit of a presumption that he “held a

reasonable fear of imminent death or serious bodily harm to himself or herself or

another” in this situation. Id. The State then has the burden of rebutting this

presumption by showing that the entry was not unlawful since police officers were

“forcefully entering” to execute a search warrant after properly identifying

themselves:

 The presumption set forth in subsection (b) of this section
 shall be rebuttable and does not apply in any of the
 following circumstances:
 ....
 (4) The person against whom the defensive force is used
 is a law enforcement officer or bail bondsman who enters
 or attempts to enter a home, motor vehicle, or workplace in
 the lawful performance of his or her official duties, and the
 officer or bail bondsman identified himself or herself in
 accordance with any applicable law or the person using
 force knew or reasonably should have known that the
 person entering or attempting to enter was a law
 enforcement officer or bail bondsman in the lawful
 performance of his or her official duties.

Id. (emphasis added).

 Here, the State presented evidence upon which the jury, if properly instructed,

could have determined that the presumption of defendant’s reasonable fear had been

 4
 STATE V. COOK

 STROUD, J., dissent

rebutted. Officer Mark Hanson testified that he identified himself as a police officer

before he kicked in defendant’s bedroom door; defendant testified he did not hear him

do so. Thus, there was a factual question as to whether Officer Hanson did in fact

identify himself “in accordance with any applicable law” or defendant otherwise

“knew or reasonably should have known that the person entering” was a law

enforcement officer. In actuality, all of the aforementioned testimony could be true:

Officer Hanson properly identified himself and defendant did not hear him; defendant

was asleep, and had to be awakened by his girlfriend and when he awoke his family

was “wailing” which may have drowned out the announcement. Defendant testified

he was in only a tank top and underwear when he jumped out of the window into the

snow and fearfully ran from his home for help to have his neighbor call the police.

Testimony from law enforcement officers confirms they found defendant barefoot and

in his underwear next to an individual who was on his phone. Defendant was not

fleeing or trying to escape the police officers but was merely “standing next” to the

person on the phone. Thus, it is entirely possible the jury, if properly instructed,

would have believed the testimony of these officers and defendant. Had the jury been

properly instructed according to North Carolina General Statute § 14-51.2, they could

have decided whether the State had overcome the rebuttable presumption

established by the statute. See id.; see also Whetstone, 212 N.C. App. at 554–55, 711

S.E.2d at 781–82 (“Our Supreme Court has held when there is evidence from which

 5
 STATE V. COOK

 STROUD, J., dissent

it may be inferred that a defendant acted in self-defense, he is entitled to have this

evidence considered by the jury under proper instruction from the court. Where there

is evidence that defendant acted in self-defense, the court must charge on this aspect

even though there is contradictory evidence by the State or discrepancies in

defendant’s evidence. Thus, if the defendant’s evidence, taken as true, is sufficient to

support an instruction for self-defense, it must be given even though the State’s

evidence is contradictory. The evidence is to be viewed in the light most favorable to

the defendant.” (citations, quotation marks, and brackets omitted)).

 North Carolina General Statute § 14-51.2 as written indicates only that officers

need to identify themselves in accordance with the law and if they do so, the State

need not prove that the defendant actually heard them, but I doubt the General

Assembly intended such a strict application, since even a quiet announcement at the

door of a home could perhaps qualify as an announcement.1 See generally N.C. Gen.

Stat. § 14-51.2. Nonetheless, I need not resolve the broader statutory question not

before this Court or the factual issues in this case because that should have been the

jury’s job. See Whetstone, 212 N.C. App. at 554–55, 711 S.E.2d at 781–82. The

question before us is simply whether defendant’s requested instruction should have

 1 Although not an issue in this case, where a law enforcement officer simply calls out “police”
or a similar announcement, North Carolina General Statute § 14-51.2 raises some obvious concerns in
situations where the residents of a home are deaf or hard of hearing. For law enforcement officers,
there is the danger of being shot by a deaf resident even though they properly announced their
identification. For the residents, there is the danger of being convicted of a serious felony for
reasonably defending themselves and their homes.

 6
 STATE V. COOK

 STROUD, J., dissent

been provided; as there was evidence from which a jury could determine that the

officers had not announced their presence properly, the officer exception to North

Carolina General Statute § 14-51.2 would not apply and the castle doctrine would.

See N.C. Gen. Stat. § 14-51.2.

 The majority’s analysis relies upon law which developed in substantially

different factual situations than this case, particularly law focusing on self-defense

in public places or at a party. Contrast State v. Williams; 342 N.C. 869, 467 S.E.2d

392 (1996); State v. Reid, 335 N.C. 647, 440 S.E.2d 776 (1994); State v. Pearson, 288

N.C. 34, 215 S.E.2d 598 (1975); State v. Hinnant, 238 N.C. App. 493, 768 S.E.2d 317

(2014). State v. Lyons is the only case the majority analysis notes that involves the

defendant being in his own home, see State v. Lyons, 340 N.C. 646, 459 S.E.2d 770

(1995), but it is an opinion written more than 15 years before the codification of the

castle doctrine. See N.C. Gen. Stat. § 14-51.2. If the castle doctrine and the law of

self-defense are not both reconciled and clearly distinguished we end up with this

nonsensical result – a person asleep in his own home is awakened by an intruder

attempting to enter his bedroom; the resident fires a “warning shot” to frighten the

intruder away, and escapes from his home through the window, as he does not wish

to encounter the intruder -- that person may be convicted of a crime for firing the gun

simply because he did not say that he intended to kill the intruder when he fired the

 7
 STATE V. COOK

 STROUD, J., dissent

gun. The law should not encourage people to shoot to kill any other person -- even

someone invading a home at night -- if a warning shot will suffice.

 Because there was evidence upon which to instruct the jury as to self-defense

in the home based upon the castle doctrine codified in North Carolina General Statute

§ 14-51.2, the trial court erred in not providing such an instruction upon defendant’s

request. I therefore respectfully dissent and would grant defendant a new trial.

 8