IN THE SUPREME COURT OF NORTH CAROLINA

 2022-NCSC-28

 No. 133PA21

 Filed 11 March 2022

 STATE OF NORTH CAROLINA

 v.
 MATTHEW BENNER

 On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision

 of the Court of Appeals, 276 N.C. App. 275 (2021), affirming judgments entered on 22

 October 2018 by Judge Kevin M. Bridges in Superior Court, Davidson County. Heard

 in the Supreme Court on 8 November 2021.

 Joshua H. Stein, Attorney General, by Joseph L. Hyde, Assistant Attorney
 General, for the State-appellee.

 M. Gordon Widenhouse, Jr., for defendant-appellant.

 ERVIN, Justice.

¶1 The issue before the Court in this case is whether the trial court completely

 and accurately instructed the jury concerning the extent to which defendant was

 entitled to exercise the right of self-defense at his trial for first-degree murder. In

 seeking relief before this Court, defendant contends that the trial court erred by (1)

 rejecting his request that the jury be instructed in accordance with N.C.P.I. – Crim.

 308.10 and (2) failing to instruct the jury that defendant was “presumed to have held
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 a reasonable fear of imminent death or serious bodily harm to himself” in light of the

 fact that defendant had been attacked in his own home. After careful consideration

 of defendant’s challenges to the trial court’s judgments in light of the applicable law,

 we affirm the decision of the Court of Appeals.

 I. Factual Background

 A. Substantive Facts

¶2 In January 2017, Samantha Wofford lived in a single-wide mobile home in

 Davidson County with her mother and fiancé, Russell Gwyn. Defendant resided in

 an adjacent mobile home, which featured a small deck from which a flight of steps led

 from the front door to the yard. On the evening of 6 January 2017, when it was

 snowing, Ms. Wofford and Mr. Gwyn were walking their two dogs when Ms. Wofford

 noticed an unfamiliar car parked outside defendant’s mobile home. At approximately

 10:00 p.m., Ms. Wofford reentered her residence with one of the dogs while Mr. Gwyn

 remained outside with the other.

¶3 As Mr. Gwyn walked from the back yard around the side of his residence, he

 heard loud bickering coming from defendant’s mobile home and decided that it was

 time for him to go back inside. As he walked toward the front steps of his residence,

 Mr. Gwyn heard a gunshot, at which point he turned and saw a man fall backward

 from the bottom of the steps leading to defendant’s mobile home before hitting the

 ground. At that point, Mr. Gwyn reentered his own mobile home and told Ms. Wofford
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 to “[c]all 911. Somebody’s been shot.” After opening the front door and seeing a man

 lying in the front yard while defendant, who was holding a firearm, looked on, Ms.

 Wofford returned to her residence and called for emergency assistance.

¶4 At the time that Deputy Sheriffs Benjamin Schlemmer and Matthew Higgins

 of the Davidson County Sheriff’s Office arrived at the scene, they observed a white

 male, who was later determined to be Damon Dry, lying on his back at the bottom of

 the flight of steps leading to defendant’s mobile home. As they cautiously approached

 defendant’s residence, Deputy Higgins struck the side of the structure with his

 flashlight and ordered any occupants to come outside. As he did so, Deputy Higgins

 heard loud noises emanating from the interior of the mobile home and noted that the

 steps leading into that structure were covered with blood and snow.

¶5 After Deputy Higgins had ordered the occupants of the mobile home to come

 outside approximately five times, defendant emerged from the front door with his

 hands in the air and walked down the steps. At that point, Deputy Higgins

 handcuffed defendant, walked defendant to his patrol vehicle, and secured defendant

 in the rear seat. As he did so, Deputy Higgins smelled the odor of alcohol on

 defendant’s breath and observed that defendant had blood on his face, arms, and

 hands and had blood stains on the sweatpants that he was wearing.

¶6 Once defendant had been placed in Deputy Higgins’ patrol vehicle, Deputies

 Schlemmer and Higgins conducted a security sweep of defendant’s residence. In the
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 course of determining that defendant’s mobile home was unoccupied, the deputies

 discovered the presence of blood on the front door frame and the screen door. After

 surveying defendant’s residence, Deputy Schlemmer began a crime scene log and

 secured the premises with security tape, while Deputy Higgins checked on Mr. Dry,

 who was not breathing, had fixed eyes, and was surrounded with blood and wearing

 a t-shirt that appeared to be stippled with shotgun pellets. A subsequent autopsy

 confirmed that Mr. Dry had died from gunshot wounds to the chest.

¶7 As the deputies took turns sitting in Deputy Higgins’ patrol vehicle with

 defendant for the purpose of keeping warm, defendant began behaving in an erratic

 manner, becoming angry and kicking the patrol vehicle’s window. In an effort to stop

 defendant from engaging in this sort of conduct, Deputy Schlemmer, with the

 assistance of Sergeant Christopher Stilwell, the supervisor of the patrol unit to which

 Deputies Schlemmer and Higgins belonged, opened the door of the compartment in

 which defendant was seated. As he did so, defendant said “You know I shot him.

 Take me to jail. Take these cuffs off me. Put them up front.”

¶8 At a later time, investigating officers removed defendant from the patrol

 vehicle while Deputy Matthew Riddle of the Davidson County Sheriff’s Office

 swabbed defendant’s hands for the purpose of determining whether gunshot residue

 was present. Although defendant was calm and compliant when this process began,

 he soon became agitated and belligerent, stating that he did not “know why we’re
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 doing this” since “I shot the m- - - - f - - - -.” After swabbing defendant’s hands, Deputy

 Riddle completed the necessary information sheet and secured the swabbings in his

 vehicle while defendant continued to scream and yell, “I shot the m- - - - - f- - - - -.”

¶9 Once they had obtained the issuance of a search warrant authorizing them to

 enter the residence, investigating officers examined the interior of defendant’s mobile

 home more thoroughly and observed the presence of blood on the steps, the railing,

 the ground in front of the steps, the screen door, and a stack of newspapers located

 just inside the front door. In addition, the investigating officers located a silver .38

 caliber revolver that contained two spent shells and four live rounds in the kitchen

 sink, a second revolver in the master bedroom, and a third handgun and six long guns

 in a gun safe that was situated in the closet of a workout room at the far end of the

 mobile home.

¶ 10 At trial, defendant testified that he and his friend, William Tuller, had met

 Mr. Dry several years earlier and that they had discovered that all three of them

 shared a mutual interest in firearms. As a result, defendant had visited in Mr. Dry’s

 home on several occasions for the purpose of examining Mr. Dry’s rifle collection and

 had shown Mr. Dry how to properly load and shoot these weapons. Eventually,

 however, defendant lost contact with Mr. Tuller and claimed that he had not been in

 the physical presence of either Mr. Tuller or Mr. Dry for approximately five years

 prior to 6 January 2017, although he admitted that he had spoken with Mr. Dry, who
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 had called to inquire if defendant’s employer was hiring additional workers,

 approximately a year and half prior to the date of the shooting.

¶ 11 Defendant testified that he had left work just before noon on 6 January 2017,

 had completed several errands, and had purchased a bottle of vodka before returning

 home. After spreading newspapers on the floor adjacent to his front door to prevent

 the introduction of snow into his residence and sweeping off his front deck, defendant

 entered the kitchen and poured himself a drink. At approximately 8:00 p.m.,

 defendant answered a knock on his front door and discovered that Mr. Dry had

 arrived. Although defendant claimed to have been surprised by Mr. Dry’s visit given

 the lengthy period of time that had elapsed since they had last seen each other,

 defendant invited Mr. Dry to come in for a drink. According to defendant, Mr. Dry

 claimed that he had recently lost his job and wanted to know whether defendant’s

 employer had any openings. After defendant told Mr. Dry that his employer did not

 have any vacant positions at that time, the two men continued to converse and walked

 around defendant’s mobile home, during which time defendant pointed out the

 workbench at which he built items for his home and reloaded ammunition for his

 firearms.

¶ 12 At approximately 9:30 p.m., after the two men had had a second drink,

 defendant “started dropping hints” that Mr. Dry should leave in light of the fact that

 defendant had not showered since getting off work. Although Mr. Dry repeated his
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 earlier question about the possibility that he might find work with defendant’s

 employer, defendant reiterated that there were no open positions at his place of work.

 Shortly before 10:00 p.m., defendant took Mr. Dry’s cup, placed it in the kitchen sink,

 and told Mr. Dry that “[i]t’s time to leave,” at which point Mr. Dry “got kind of a wild

 eyed look on his face”; said “[m]an, I really need a job. I need a job. I need money”;

 and grabbed defendant’s shirt before pushing defendant back against the sink. In

 response, defendant shoved Mr. Dry, opened the front door, and ordered Mr. Dry to

 leave. As Mr. Dry rushed at defendant and pushed defendant against the door jamb,

 he said, “I’m not leaving” and “I need money.”

¶ 13 At some point during this altercation, defendant escaped to his bedroom, where

 he retrieved a revolver from his nightstand before returning to the living room,

 pointing the gun at Mr. Dry, and threatening to shoot Mr. Dry if he did not leave.

 After defendant made these comments, Mr. Dry stated that he was going to kill

 defendant and started moving toward him. As Mr. Dry was about to reach him,

 defendant fired two shots into Mr. Dry’s chest, causing Mr. Dry to stand up and walk

 out the front door.

¶ 14 Upon making his way to the front door, defendant saw Mr. Dry, who appeared

 to be dead, lying on the ground outside. Although defendant went down the steps for

 the purpose of checking on Mr. Dry, he was unable to detect a pulse upon examining

 Mr. Dry’s body. At that point, defendant washed his hands in the sink and called his
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 mother, who told him to seek emergency assistance and to wait for law enforcement

 officers and other emergency personnel to arrive. In spite of the fact that defendant

 did not recall having heard anyone knocking on the exterior of his mobile home, he

 stepped outside and surrendered when he observed shadows moving around in the

 yard.

 B. Procedural History

¶ 15 On 13 March 2017, the Davidson County grand jury returned bills of

 indictment charging defendant with first-degree murder and possession of a firearm

 by a felon. The charges against defendant came on for trial before the trial court and

 a jury at the 10 October 2018 session of Superior Court, Davidson County. At trial,

 the State elicited evidence tending to show that defendant had been previously

 convicted of breaking or entering a motor vehicle in Guilford County. Although

 defendant did not deny the existence of this previous felony conviction or that he had

 kept firearms in his residence, he claimed to have been unaware that it was unlawful

 for him to possess a firearm given his belief that he “had all [his] rights restored to

 [him] over 20 years ago, including the right to keep and bear arms.”

¶ 16 At the jury instruction conference, the trial court proposed, with the

 concurrence of the prosecutor, to instruct the jury in accordance with N.C.P.I. – Crim.

 206.10, which encompasses the law of first-degree murder involving the use of a

 deadly weapon and the effect of a defendant’s claim to have exercised the right of self-
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

defense. N.C.P.I. – Crim. 206.10. Although defendant requested the trial court to

instruct the jury in accordance with N.C.P.I. – Crim. 308.10, which informs the jury

that a defendant who is situated in his own home and is not the initial aggressor can

“stand the defendant’s ground and repel force with force regardless of the character

of the assault being made upon the defendant,” the State objected to defendant’s

request on the grounds that, while N.C.P.I. – Crim. 308.10 reflected the provisions of

N.C.G.S. §§ 14-51.2 and 14-51.3, which provide for a statutory right of self-defense,

the justification described in those provisions is not available to a person who “[w]as

attempting to commit, committing, or escaping after the commission of a felony.”

N.C.G.S. § 14-51.4(1). According to the State, since “defendant was in the commission

of and was continually committing the felony of possession of a firearm by a felon,”

the “plain language” of N.C.G.S. § 14-51.4(1) deprived him of his statutory right of

self-defense. After arguing that the limitation upon the right of self-defense upon

which the State relied should not apply given the absence of any “causal connection”

between defendant’s possession of a firearm and his need to use that firearm in self-

defense, defendant acknowledged that the Court of Appeals had rejected a similar

argument in State v. Crump, 259 N.C. App. 144, 150 (2018), overruled by State v.

McLymore, 2022-NCSC-12, while contending that the relevant portion of Crump was

dicta and that adhering to the interpretation adopted in Crump would create the

“absurd result” that a defendant attacked in his own home would be prohibited from
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 defending himself based solely upon his status as a convicted felon.1 At the conclusion

 of the jury instruction conference, the trial court declined to instruct the jury in

 accordance with N.C.P.I. – Crim. 308.10 on the grounds that a contrary action would

 require it to ignore the plain language of N.C.G.S. § 14-51.4.

¶ 17 On 19 October 2018, the jury returned a verdict finding defendant guilty of

 possession of a firearm by a felon. On 22 October 2018, the jury returned a verdict

 convicting defendant of first-degree murder. After accepting the jury’s verdicts, the

 trial court entered judgments sentencing defendant to a term of life imprisonment

 without the possibility of parole based upon his conviction for first-degree murder and

 to a concurrent term of fourteen to twenty-six months imprisonment based upon his

 conviction for possession of a firearm by a felon. Defendant noted an appeal to the

 Court of Appeals from the trial court’s judgments.

 C. Court of Appeals Decision

¶ 18 In seeking relief from the trial court’s judgments before the Court of Appeals,

 defendant argued that the trial court had (1) erred by rejecting his request that the

 1 After the conclusion of defendant’s trial, this Court reversed the Court of Appeals’

 decision in Crump on other grounds without reaching the self-defense issue that was before
 us in that case. See State v. Crump, 376 N.C. 375 (2020). Subsequently, however, we held in
 McLymore that, in order for a defendant to be precluded from exercising the right of self-
 defense on the basis of the felony disqualifier set out in N.C.G.S. § 14-51.4(1), “the State must
 prove the existence of an immediate causal nexus between the defendant’s disqualifying
 conduct and the confrontation during which the defendant used force,” effectively overruling
 the aspect of the Court of Appeals’ decision in Crump upon which the trial court relied in this
 case. McLymore, ¶¶ 14, 30.
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 jury be instructed in accordance with N.C.P.I. – Crim. 308.10 and that the jury should

 presume that he had a reasonable fear of death or great bodily injury in light of the

 fact that he had been attacked in his own home; (2) committed plain error by failing

 to instruct the jury concerning defendant’s “mistake of fact” in believing that his right

 to possess a firearm had been restored; and (3) erred by requiring defendant to pay

 restitution in the amount of $1,874.49 in light of the fact that the record developed at

 the sentencing hearing did not support that award.2 In support of the first of these

 three contentions, defendant argued that he was entitled to a “proper, complete

 instruction on self-defense, including the right to ‘stand his ground’ in his own home

 and have the jury presume his fear of death was reasonable,” and asserted, without

 making any reference to Crump, that a literal reading of N.C.G.S. § 14-51.4(1) that

 had the effect of precluding him from taking advantage of the right of self-defense

 made available by N.C.G.S. §§ 14-51.2 and 14-51.3 for the sole reason that he was, as

 a convicted felon, prohibited from possessing a firearm would produce “absurd

 results.”

¶ 19 In rejecting defendant’s initial challenge to the trial court’s judgments, the

 Court of Appeals concluded that, to the extent that defendant was seeking relief on

 2 In view of the fact that the second and third of the three challenges that defendant

 advanced in opposition to the trial court’s judgments before the Court of Appeals have not
 been brought forward for our consideration, we will refrain from discussing them any further
 in this opinion.
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 the basis of the trial court’s failure to instruct the jury that he was “presumed to have

 held a reasonable fear of imminent death or serious bodily harm to himself” at the

 time that he had been attacked by Mr. Dry, defendant had failed to preserve this

 issue for purposes of appellate review given that he had not requested the trial court

 to instruct the jury in accordance with N.C.P.I. – Crim. 308.80 (June 2021), which

 addresses a defendant’s right to defend his or her home. State v. Benner, 276 N.C.

 App. 275, 2021-NCCOA-79, ¶ 21 (unpublished). In upholding the trial court’s refusal

 to instruct the jury in accordance with N.C.P.I. – Crim. 308.10, the Court of Appeals

 determined that it was bound by its prior decision in Crump, which held that the

 disqualification provision set out in N.C.G.S. § 14-51.4(1) did not require the existence

 of a “causal nexus” between the disqualifying felony and the circumstances giving

 rise to the defendant’s perceived need to use defensive force. Id., ¶ 27 (citing In re

 Civil Penalty, 324 N.C. 373, 384 (1989)). As a result, the Court of Appeals found no

 error in defendant’s first-degree murder conviction. Id., ¶ 39. On 9 June 2021, this

 Court allowed defendant’s petition for discretionary review of the Court of Appeals’

 decision.

 II. Substantive Legal Analysis

 A. Standard of Review

¶ 20 This Court reviews decisions of the Court of Appeals for errors of law. N.C. R.

 App. P. 16(a); State v. Melton, 371 N.C. 750, 756 (2018). “In determining the propriety
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 of the trial judge’s charge to the jury, the reviewing court must consider the

 instructions in their entirety, and not in detached fragments.” State v. Holden, 346

 N.C. 404, 438–39 (1997) (cleaned up). The trial court is required to give a requested

 instruction “only if the proposed charge is a correct statement of the law and is

 supported by the evidence.” State v. Bell, 338 N.C. 363, 391 (1994) (citation omitted).

 In evaluating the extent to which a trial court did or did not err in refusing to instruct

 the jury in accordance with a defendant’s request, we interpret the facts in the light

 most favorable to the defendant. State v. McCray, 312 N.C. 519, 529 (1985) (citation

 omitted). A trial court’s erroneous refusal to instruct the jury in accordance with a

 criminal defendant’s request will not result in a reversal of the trial court’s judgment

 unless the error in question has prejudiced the defendant, with such prejudice having

 occurred in the event that the defendant shows that there is a “reasonable possibility

 that, had the trial court given the [required instruction], a different result would have

 been reached at trial.” State v. Lee, 370 N.C. 671, 672 (2018); see also N.C.G.S. §§

 15A-1442(4)(d), 1443(a) (2021).

 B. Duty to Retreat Instruction

¶ 21 In seeking to persuade us to overturn the Court of Appeals’ decision, defendant

 begins by arguing that, in rejecting his request that the trial court instruct the jury

 in accordance with N.C.P.I. – Crim. 308.10, the trial court had deprived him of the

 right to a “complete self-defense instruction,” so that he was entitled to a new trial.
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

State v. Bass, 371 N.C. 535, 542 (2018); State v. Coley, 375 N.C. 156, 159, 164 (2020).

According to N.C.P.I. – Crim. 308.10:

 If the defendant was not the aggressor and the defendant
 was [in the defendant’s own home] [on the defendant’s own
 premises] [in the defendant’s place of residence] [at the
 defendant’s workplace] [in the defendant’s motor vehicle]
 [at a place the defendant had a lawful right to be], the
 defendant could stand the defendant’s ground and repel
 force with force regardless of the character of the assault
 being made upon the defendant. However, the defendant
 would not be excused if the defendant used excessive force.

N.C.P.I. – Crim. 308.10 (footnotes omitted). N.C.P.I. – Crim. 308.10 is derived in part

from N.C.G.S. §§ 14-51.2 and 14-51.3, which, by statute, authorize the exercise of the

right to self-defense under certain circumstances. See Bass, 371 N.C. at 540–41.

According to N.C.G.S. § 14-51.2(b), “[t]he lawful occupant of a home . . . is presumed

to have held a reasonable fear of imminent death or serious bodily harm to himself

or herself or another when using defensive force that is intended or likely to cause

death or serious bodily harm” in the event that the person against whom the

defendant was using defensive force was attempting to “unlawfully and forcefully”

enter the defendant’s home, while N.C.G.S. § 14-51.2(f) provides that “[a] lawful

occupant within his or her home . . . does not have a duty to retreat from an intruder

in the circumstances described in this section” and N.C.G.S. § 51.2(g) clarifies that

“[t]his section is not intended to repeal or limit any other defense that may exist under

the common law.”
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

¶ 22 According to defendant, N.C.P.I – Crim. 308.10, “particularly the language

 that a person in his home could ‘repel force with force regardless of the character of

 the assault being made upon’ him, describe[s] his common law right to use force, even

 deadly force, when defending himself in his own home.”3 According to defendant, the

 trial court and the Court of Appeals both erred in relying upon the disqualification

 provision set out in N.C.G.S. § 14-51.4(1) to justify the rejection of his request that

 the jury be instructed in accordance with N.C.P.I. – Crim. 308.10 by ignoring the fact

 that N.C.G.S. § 14-51.2(g) precludes the use of N.C.G.S. § 14-51.4(1) “to repeal or

 limit” common law defenses. As a result, defendant contends that the trial court’s

 instructions to the jury were incomplete given that “a defendant entitled to any self-

 defense instruction is entitled to a complete self-defense instruction, which includes

 the relevant stand-your-ground provision,” Bass, 371 N.C. at 542 (emphasis in

 original), and that a complete self-defense instruction would have informed the jury

 that defendant was entitled to “repel force with force regardless of the character of

 the assault being made upon [him],” N.C.P.I. – Crim. 308.10.

 3 According to the State, this aspect of defendant’s challenge to the Court of Appeals’

 decision is not properly before us given that, “[b]eyond quoting N.C.P.I. – Crim. 308.10,
 [d]efendant made no argument to the Court of Appeals that he was not entitled to an
 instruction that he could repel force with force in his own home ‘regardless of the character
 of the assault’ ” and given that “[q]uestions not presented to the Court of Appeals are not
 properly before [the Supreme Court].” See State v. Hurst, 304 N.C. 709, 713 (1982) (per
 curium). A careful review of the record persuades us, however, that defendant has argued at
 every stage of this case that the trial court erred by refusing to instruct the jury in accordance
 with N.C.P.I. – Crim. 308.10.
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

¶ 23 In defendant’s view, he was clearly prejudiced by the trial court’s erroneous

 refusal to instruct the jury in accordance with N.C.P.I. – Crim. 308.10 on the grounds

 that the record contained ample evidence tending to show that Mr. Dry had attacked

 him in his own home. Defendant contends that, “[u]nder the facts, taken in the light

 most favorable to him, [defendant] was entitled to have the jury properly instructed

 on his common law and statutory right to use deadly force to defend himself in his

 home” “regardless of the character of the assault” given that the delivery of such an

 instruction would have “inform[ed] the [jury’s] determination of whether

 [defendant’s] actions were reasonable under the circumstances, which is a critical

 component of self-defense.” See Lee, 370 N.C. at 673–75. After acknowledging that

 the jury knew that defendant had shot Mr. Dry when Mr. Dry was unarmed and that

 the jury had been told that defendant would not be entitled to have acted in self-

 defense in the event that he had used excessive force, defendant points out that “the

 jury was never told that he could use deadly force to repel non-deadly force in his own

 home.” As a result, defendant contends that “the [S]tate cannot show this

 constitutional error was harmless beyond a reasonable doubt.”

¶ 24 In seeking to persuade us to uphold the Court of Appeals’ decision with respect

 to this issue, the State begins by arguing that the trial court did not err in instructing

 the jury in accordance with N.C.P.I. – Crim. 308.10 on the grounds that, even if

 defendant was entitled to the delivery of an instruction like that set out in N.C.P.I. –
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

Crim. 308.10, “the trial court adequately convey[ed] the substance of [defendant’s]

request” to the jury, citing State v. Godwin, 369 N.C. 604, 613 (2017) (holding that,

“[w]hen a defendant requests a special jury instruction that is correct in law and

supported by the evidence, the court must give the instruction in substance” but that

“the court is not required to give [the instruction] verbatim”), and State v. Trull, 349

N.C. 428, 455–56 (1998) (noting that “jury instructions should be as clear as

practicable, without needless repetition”). After pointing out that the trial court had

informed the jury that defendant would not be guilty of first-degree murder in the

event that he acted in self-defense and that he had no duty to retreat in his own home,

the State contends that, “[w]hen the use of defensive force is authorized, there is no

meaningful difference between a stand-your-ground instruction and a no-duty-to-

retreat instruction.” According to the State, the reference to “regardless of the

character of the assault” contained in N.C.P.I. – Crim. 308.10 “is intended to erase

the distinction between simple and felonious assaults, vis-à-vis the duty to retreat,

when a person is attacked in his home” and that, because the trial court in this case

did not tell the jury that defendant had a duty to retreat from a simple assault, there

was no need to qualify that instruction with respect to defendant’s right to self-

defense in his own home. Finally, the State contends that, because the trial court

instructed the jury that defendant could use deadly force in self-defense and that he

had no duty to retreat in his own home, defendant “fails to explain how the omitted
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 instruction would have added any substantive principle on which he could have been

 acquitted,” so that defendant had failed to show that there was a “reasonable

 possibility” that the jury would have reached a different outcome had defendant’s

 requested instruction been delivered.

¶ 25 The initial issue that we are required to address in evaluating the validity of

 defendant’s challenge to the Court of Appeals’ decision is whether defendant’s

 proposed instruction rested upon a correct statement of the applicable law. Bell, 338

 N.C. at 391. At the outset, we acknowledge that differences exist between the

 language in which N.C.P.I – Crim. 308.10 and N.C.G.S. §§ 14-51.2 and 14-51.3 are

 couched. Although N.C.P.I. – Crim. 308.10 cites N.C.G.S. §§ 14-51.2(f) and 14-

 51.3(a), the language used in this instruction antedates the enactment of these

 statutory provisions. In State v. Morgan, we quoted the 1983 edition of N.C.P.I. –

 Crim. 308.10, which provided that:

 If the defendant was not the aggressor and he was [in his
 own home] [on his own premises] [at his place of business]
 he could stand his ground and repel force with force
 regardless of the character of the assault being made upon
 him. However, the defendant would not be excused if he
 used excessive force.

 315 N.C. 626, 643 (1986). The only difference between the 1983 and 2019 versions of

 N.C.P.I. – Crim. 308.10 is the addition of “the defendant’s motor vehicle” and “a place

 the defendant had a lawful right to be” to the list of places in which a defendant was

 entitled to stand his or her ground, additions that clearly reflect the enactment of
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 N.C.G.S. §§ 14-51.2(b) and 14-51.3(a). The 1983 instruction quoted in Morgan, in

 turn, appears to have been derived from our decision in State v. Johnson, which

 declares that,

 [o]rdinarily, when a person who is free from fault in
 bringing on a difficulty, is attacked in his own home or on
 his own premises, the law imposes on him no duty to
 retreat before he can justify his fighting in self defense,
 regardless of the character of the assault, but is entitled
 to stand his ground, to repel force with force, and to
 increase his force, so as not only to resist, but also to
 overcome the assault and secure himself from all harm.
 This, of course, would not excuse the defendant if he used
 excessive force in repelling the attack and overcoming his
 adversary.

 261 N.C. 727, 729–30 (1964) (per curium) (citations omitted) (emphasis added). Thus,

 defendant’s contention that the portion of N.C.P.I. – Crim. 308.10 allowing him to

 “repel force with force regardless of the character of the assault being made upon

 [him]” appears rooted in common, rather than statutory, law. As a result, the

 remaining issue that we must address is whether defendant was entitled to the

 delivery of the requested instruction in light of the facts of this case.

¶ 26 Despite the fact that, while the enactment of N.C.G.S. § 14-51.2 was not

 “intended to repeal or limit any other defense that may exist under the common law,”

 N.C.G.S. § 14-51.2(g), we have held that the enactment of N.C.G.S. § 14-51.3 has

 supplanted the common law right to perfect self-defense to the extent that it

 addresses a particular issue, a fact that renders the disqualification provision set out
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

in N.C.G.S. § 14-51.4 potentially relevant to this case, assuming that the factual

predicate necessary for the invocation of this disqualification exists. See McLymore,

¶ 12. According to the trial court and the Court of Appeals, the fact that defendant

fatally wounded Mr. Dry while possessing a firearm after having been convicted of a

felony compelled the conclusion that the justifications afforded by N.C.G.S. §§ 14-51.2

and 14-51.3 as reflected in N.C.P.I. – Crim. 308.10 were not available to him.

Although this conclusion may be inconsistent with N.C.G.S. § 14-51.2(g), which

upholds the continued validity of the common law with respect to the exercise of one’s

right to defend one’s habitation, as well as our decision in McLymore, we need not

reconcile any such inconsistency or address the manner in which the disqualification

provision contained in N.C.G.S. § 14-51.4(1) should be applied in this case given that,

as the State has argued, the trial court included the substance of the instruction upon

which defendant’s challenge to the Court of Appeals’ decision rests in the remainder

of its instructions to the jury.4

 4 Aside from the arguments addressed in the text of this opinion, the State contends

that the trial court did not err by denying defendant’s request that the jury be instructed in
accordance with N.C.P.I. – Crim. 308.10 on the theory that defendant’s requested instruction
lacked sufficient evidentiary support. In the State’s view, defendant “did not stand his
ground when [Mr.] Dry attacked him in the kitchen” and, instead, “withdrew to the bedroom
to retrieve a firearm.” Aside from the fact that the evidence, when viewed in the light most
favorable to defendant, would support an inference that Mr. Dry advanced upon defendant
at a time when he was in his own residence and after defendant had retrieved a firearm,
defendant is not required to have a weapon in his possession at all times in order to avoid the
necessity of retreating when called upon to defend himself or herself in his or her own home.
Cf. State v. Miller, 267 N.C. 409, 411 (1966) (stating that, when a homeowner fears that an
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

¶ 27 Even if a litigant is otherwise entitled to the delivery of a particular

 instruction, “the court is not required to give [it] verbatim”; instead, “it is sufficient if

 [the instruction is] given in substance.” Godwin, 369 N.C. at 613. In other words,

 “[i]f the instructions given by the trial court adequately convey the substance of

 defendant’s proper request, no further instructions are necessary,” id. (cleaned up),

 with this being true even if the trial court relied upon an impermissible reason for

 refusing to deliver the requested instruction. At trial, the trial court instructed the

 jury in accordance with N.C.P.I – Crim. 206.10 that:

 The defendant would be excused of first degree murder and
 second degree murder on the grounds of self defense if,
 first, the defendant believed it was necessary to kill the
 alleged victim in order to save the defendant from death or
 great bodily harm and, second, the circumstances as they
 appeared to the defendant at the time were sufficient to
 create such a belief in the mind of a person of ordinary
 firmness.

 In determining the reasonableness of defendant’s belief,
 you should consider the circumstances as you find them to
 have existed from the evidence, including the size, age and
 strength of the defendant as compared to the alleged
 victim, the fierceness of the assault, if any, upon the
 defendant, and whether the alleged victim had a weapon in
 the alleged victim’s possession.

 The defendant would not be guilty of any murder or
 manslaughter if the defendant acted in self defense and if

 intruder may attempt to inflict serious injury upon him or his family, “the law does not
 require such householder to flee or to remain in his house until assailant is upon him, but he
 may open his door and shoot his assailant, if such course is apparently necessary for the
 protection of himself or family”) (cleaned up).
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 the defendant did not use excessive force under the
 circumstances.

 A defendant does not have the right to use excessive force.
 A defendant uses excessive force if a defendant uses more
 force than reasonably appeared to the defendant to be
 necessary at the time of the killing. It is for you, the jury,
 to determine the reasonableness of the force used by the
 defendant under all of the circumstances as they appeared
 to the defendant at the time.

 Furthermore, the defendant has no duty to retreat in a
 place where the defendant has a lawful right to be. The
 defendant would have a lawful right to be in the
 defendant’s home. Therefore, in order for you to find the
 defendant guilty of first degree murder or second degree
 murder, the State must prove beyond a reasonable doubt,
 among other things, that the defendant did not act in self
 defense.

Thus, the trial court clearly informed the jury that defendant had no duty to retreat

before exercising the right to defend himself in his own home, with there being no

material difference that we can see between an instruction that “defendant could

stand the defendant’s ground” and an instruction that defendant “has no duty to

retreat.” See McCray, 312 N.C. at 532. In addition, the trial court instructed the jury

that defendant was entitled to exercise the right of self-defense in the event that he

“believed it was necessary to kill [Mr. Dry] . . . to save [himself] from death or great

bodily harm” and that his belief to that effect was reasonable in light of “the

circumstances as they appeared to the defendant at the time,” with this instruction

being materially the same as an instruction that defendant had the right to “repel
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 [deadly] force with [deadly] force.” See N.C.P.I – Crim. 308.10. As a result, given

 that the instructions that the trial court delivered to the jury included the substance

 of defendant’s requested instruction, the trial court did not err by failing to instruct

 the jury using the exact language in which N.C.P.I. – Crim. 308.10 is couched. See

 Godwin, 369 N.C. at 613.

¶ 28 In defendant’s view, however, the instructions that the trial court actually

 delivered did not suffice to obviate the necessity for overturning defendant’s first-

 degree murder conviction because those instructions did not include any language

 concerning defendant’s right to “repel force with force regardless of the character of

 the assault.” In support of this argument, defendant directs our attention to State v.

 Francis, in which we held that the trial court erred by instructing the jury that “a

 person can’t fight somebody with a pistol who is making what is called a simple

 assault on him, that is an assault in which no weapon is being used, such as a deadly

 weapon or a knife or a pistol,” on the grounds that, “[o]rdinarily, when a person, who

 is free from fault in bringing on a difficulty, is attacked in his own dwelling, or home

 . . . , the law imposes upon him no duty to retreat before he can justify his fighting in

 self-defense, —regardless of the character of the assault.” 252 N.C. 57, 58–59 (1960)

 (emphasis added) (quoting State v. Pennell, 231 N.C. 651, 654 (1950)). We also noted

 in Francis that, in the event that a defendant was in his own home and was acting in

 defense of himself or his habitation, he “was not required to retreat in the face of a
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 threatened assault, regardless of its character, but was entitled to stand his ground,

 to repel force with force, and to increase his force, so as not only to resist, but also to

 overcome the assault.” Id. at 59–60 (emphasis added) (internal citations omitted). In

 our opinion, defendant’s reliance upon Francis is misplaced.

¶ 29 The essential defect that led us to grant the defendant a new trial in Francis

 was that the trial court’s erroneous instruction “virtually eliminate[d] the defendant’s

 right of self-defense since he used a pistol in connection with defending himself

 against a simple assault.” Id. at 59 (emphasis added). Although we did use the

 expression “regardless of the character of the assault” in discussing the defendant’s

 right to defend himself, the State is correct that our use of that language was intended

 to make it clear that there was no distinction between a simple and a felonious assault

 in determining whether a defendant had a duty to retreat before exercising the right

 of self-defense in his own home. On the other hand, Francis reiterates the well-

 established legal principle that, even though a defendant attacked in his own home

 is “ ‘entitled to stand his ground, to repel force with force, and to increase his force,

 so as not only to resist, but also to overcome the assault,’ ” such an entitlement

 “ ‘would not excuse the defendant if he used excessive force in repelling the assault,’ ”

 Francis, 252 N.C. at 758 (quoting State v. Sally, 233 N.C. 225, 226 (1951) (citations

 omitted)), a statement that indicates that the proportionality rule inherent in the

 requirement that the defendant not use excessive force continues to exist even in
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 instances in which a defendant is entitled to stand his or her ground. For that reason,

 a trial court need not use the expression “regardless of the character of the assault”

 in the absence of a concern that the jury would believe that the nature of the assault

 that the victim had made upon the defendant had some bearing upon the extent to

 which a defendant attacked in his own home has a duty to retreat before exercising

 the right of self-defense. See also State v. Pearson, 288 N.C. 34, 39–40 (1975); State

 v. Frizzelle, 243 N.C. 49, 50–51 (1955). In view of the fact that the trial court in this

 case made no distinction between a simple and a felonious assault in its instructions

 to the jury concerning the extent to which defendant was entitled to exercise the right

 of self-defense without making an effort to retreat and did not tell the jury that

 defendant was not entitled to use a firearm or any other form of deadly force in the

 course of defending himself from Mr. Dry’s attack as long as he actually and

 reasonably believed that he needed to use deadly force to protect himself from death

 or great bodily injury, the trial court did not need to further clarify that defendant

 was entitled to exercise the right of self-defense “regardless of the character of the

 assault.” See Holden, 346 N.C. at 439 (stating that “the reviewing court must

 consider [jury] instructions in their entirety, and not in detached fragments”) (cleaned

 up).

¶ 30 Finally, we conclude that, even if the trial court erred by rejecting defendant’s

 request that the jury be instructed in accordance with N.C.P.I. – Crim. 308.10,
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

defendant has failed to establish that “there is a reasonable possibility that, had the

error in question not been committed, a different result would have been reached at

the trial.” N.C.G.S. § 15A-1443(a)–(b);5 see also Lee, 370 N.C. at 671 (concluding that

the defendant had “shown a reasonable possibility” that a different result would have

been reached at trial had the trial court given the requested stand-your-ground

instruction). As we have already noted, the trial court instructed the jury in such a

manner as to effectively inform it that defendant had the right to stand his ground in

the event that he was attacked within his own residence and did not distinguish

between attacks made upon him using deadly, as compared to non-deadly, force in

those instructions. As we have already noted, in this case, unlike in Lee, the jury was

told that defendant had no duty to retreat after having been attacked in his own

home. Finally, the record contains more than sufficient evidence from which a

reasonable jury could have determined that defendant used excessive force when he

killed Mr. Dry. Thus, for all of these reasons, we hold that the trial court did not err

by declining to instruct the jury in accordance with N.C.P.I. – Crim. 308.10 and that

there is no reasonable possibility that the outcome would have been different had the

 5 Although defendant asserts that the trial court’s alleged error was of a constitutional

dimension, defendant did not object to the trial court’s instructions on constitutional grounds
prior to the beginning of the jury’s deliberations and has failed to explain how the trial court’s
instructions violated any of his constitutional rights. As a result, the prejudicial effect of any
instructional error that the trial court might have committed should be evaluated on the
basis of the test set out in N.C.G.S § 15A-1443(a) rather than on the basis of the prejudice
test applicable to constitutional errors set out in N.C.G.S. § 15A-1443(b).
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 trial court instructed the jury consistently with defendant’s request. As a result,

 defendant is not entitled to any relief from the Court of Appeals’ decision based upon

 the first of the two challenges that he has advanced in opposition to that decision

 before this Court.

 C. Presumption of Reasonable Fear Instruction

¶ 31 In the second of the two challenges to the Court of Appeals’ decision that

 defendant has advanced before this Court, defendant contends that the Court of

 Appeals erroneously upheld the trial court’s failure to afford him the benefit of a

 “complete self-defense instruction” by refusing to instruct the jury that he was

 “presumed to have held a reasonable fear of imminent death or serious bodily harm

 to himself” in light of the fact that he had been attacked in his own home. In

 defendant’s view, he was entitled to the delivery of this instruction notwithstanding

 the trial court’s invocation of the disqualifier contained in N.C.G.S. § 14-51.4(1). As

 the Court of Appeals correctly held, however, defendant failed to properly preserve

 his challenge to the trial court’s alleged instructional error for purposes of appellate

 review.

¶ 32 “A party may not make any portion of the jury charge or omission therefrom

 the basis of an issue presented on appeal unless the party objects thereto before the

 jury retires to consider its verdict . . . .” N.C. R. App. P. 10(a)(2). According to well-

 established North Carolina law, a party’s decision to request the delivery of a
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 particular instruction during the jury instruction conference suffices to preserve a

 challenge to the trial court’s refusal to deliver that instruction to the jury for further

 consideration by the appellate courts regardless of the extent to which the relevant

 party does or does not lodge a subsequent objection. State v. Hood, 332 N.C. 611,

 616–17 (1992). But see State v. Gay, 334 N.C. 467, 486 (1993) (observing that

 “defendant has waived her right to review of this issue by failing to object to the trial

 court’s omission of the requested instruction”). In addition, in the event that “the

 judicial action questioned is specifically and distinctly contended to amount to plain

 error,” the extent to which the judicial action or inaction constitutes plain error may

 be argued before a reviewing court. N.C. R. App. P. 10(a)(4). On the other hand, if a

 party neither lodges a timely objection nor asserts that the trial court’s action or

 inaction constituted plain error, all review of that alleged error, including plain error,

 has been waived. State v. Bell, 359 N.C. 1, 27 (2004).

¶ 33 In seeking to persuade us that the Court of Appeals erred by holding that he

 had failed to preserve for appellate review his challenge to the trial court’s failure to

 instruct the jury that defendant had a reasonable fear that he was at imminent risk

 of death or great bodily harm in view of the fact that he had been assaulted in his

 own home, defendant states that, during the jury instruction conference, counsel for

 both parties discussed the extent to which defendant was entitled to the protections

 of N.C.G.S. §§ 14-51.2 and 14-51.3, “which include[ ] a presumption that his belief [in
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 the need to use deadly force] was reasonable if he was attacked in his own home.”

 According to defendant, the existence of this discussion sufficed to preserve his

 challenge to the trial court’s failure to deliver the relevant instruction to the jury,

 with the Court of Appeals having “muddled this point by noting that [defendant] did

 not request [N.C.P.I. – Crim.] 308.80, which concerns the defense of habitation”

 despite the fact that defendant had refrained from requesting the delivery of this

 instruction in light of the fact that he did not claim to have been defending his

 habitation. In addition, defendant contends that the Court of Appeals erroneously

 concluded that he was not entitled to the protections made available pursuant to

 N.C.G.S. §§ 14-51.2 and 14-51.3 based upon Crump and that “[r]eview of this issue

 would necessarily include the propriety of the trial court’s instructions on self-defense

 that did not include statutory language about the presumption that [defendant’s] fear

 of death or great bodily harm was reasonable.”

¶ 34 The State, on the other hand, argues that the second of the two issues that

 defendant seeks to present for our consideration was not properly before the Court

 because this issue “was not stated in the [discretionary review] petition at all,” with

 defendant having “never suggested . . . that the Court of Appeals erred by approving

 the omission of an instruction on the presumption established by” N.C.G.S. § 14-

 51.2(b). In addition, the State contends that “[d]efendant did not request any

 instruction that the jury should presume his fear of death or bodily harm was
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 reasonable” or argue “that the trial court plainly erred by omitting that instruction.”

 As far as the merits of the second of defendant’s two claims is concerned, the State

 contends that “the justification described in Sections 14-51.2 and 14-51.3 is not

 available to a person who used defensive force and who was committing a felony,”

 citing N.C.G.S. § 14-51.4 (2019). Finally, the State asserts that defendant had

 “fail[ed] to explain how the omission of an instruction the jury should presume he had

 a reasonable fear of death or great bodily harm affected the result.” As a result, for

 all of these reasons, the State urges us to refrain from granting any relief from the

 trial court’s judgments on the basis of the second of defendant’s instructional

 arguments.

¶ 35 The language that defendant believes that the trial court erroneously failed to

 include in its jury instructions, which refers to the fact that defendant was “presumed

 to have held a reasonable fear of imminent death or serious bodily harm” when

 assaulted in this own home, is taken verbatim from N.C.P.I. – Crim. 308.80. For that

 reason, instead of “muddling” defendant’s argument, the Court of Appeals did nothing

 more than make reference to the source from which defendant derived his requested

 jury instruction. Moreover, as the Court of Appeals indicated, the transcript of the

 jury instruction conference shows that defendant never requested the trial court to

 instruct the jury that he was presumed to have a reasonable fear of imminent death

 or great bodily injury as a result of the fact that he had been assaulted in his home.
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 Instead, defendant simply requested, as we have already discussed, that the trial

 court instruct the jury in accordance with N.C.P.I – Crim. 308.10 before engaging in

 a colloquy with the prosecutor and the trial court concerning the extent to which

 defendant’s status as a felon in possession of a firearm precluded the delivery of an

 instruction like that contained in N.C.P.I. – Crim. 308.10.

¶ 36 A careful review of the record satisfies us that, contrary to defendant’s

 contention, a request to be afforded the protections made available by N.C.G.S. §§ 14-

 51.2 and 14-51.3 does not preserve his right to complain about the trial court’s failure

 to instruct the jury in accordance with every sentence or clause contained in those

 statutory provisions. Instead, North Carolina Rule of Appellate Procedure 10(a)(2)

 requires that a party seeking to challenge an alleged instructional error on appeal

 must either specifically request an instruction that the trial court fails to deliver or

 object to the trial court’s failure to deliver the relevant instruction in a timely manner.

 Defendant did not take either of these steps. As a result, since defendant failed to

 lodge an adequate objection to the trial court’s failure to instruct the jury that

 defendant was presumed to have had a reasonable fear of imminent death or great

 bodily injury as required by Appellate Rule 10(a)(2) and since defendant failed to

 argue that the omission of the relevant instruction constituted plain error, Bell, 359

 N.C. at 27, we will refrain from addressing this aspect of defendant’s challenge to the

 trial court’s instructions on the merits and decline to disturb the trial court’s
 STATE V. BENNER

 2022-NCSC-28

 Opinion of the Court

 judgments on the basis of the second of the two contentions that defendant has

 advanced before this Court.

 III. Conclusion

¶ 37 Thus, for the reasons set forth above, we hold that the trial court did not err

 by declining to instruct the jury in accordance with N.C.P.I. – Crim. 308.10 and that

 defendant has not preserved for any type of appellate review his challenge to the trial

 court’s decision not to instruct the jury in accordance with N.C.P.I. – Crim. 308.80

 that he was “presumed to have held a reasonable fear of imminent death or serious

 bodily harm to himself” in light of the fact that he had been attacked in his own home.

 As a result, we affirm the decision of the Court of Appeals.

 AFFIRMED.
 Justice HUDSON dissenting.

¶ 38 There is a significant difference between a person who, when unilaterally

 attacked in his own home, has the right to defend himself or herself with deadly force

 “regardless of the character of the assault,” and a person who has the right to defend

 himself or herself with deadly force only if he or she has a reasonable belief that such

 force is “necessary . . . to save [himself or herself] from death or great bodily harm.”

 In my view, that difference should be dispositive here. Because defendant was

 entitled to jury instructions that clearly established his right to self-defense

 “regardless of the character of the assault,” I would hold that the trial court

 prejudicially erred in ruling otherwise. Accordingly, I respectfully dissent.

¶ 39 The key facts are clear and undisputed. After initially welcoming Damon Dry

 into his home, defendant told Dry to leave. Dry refused and instead pushed defendant

 against the sink and demanded money. Defendant pushed Dry off of him, opened the

 door, and again told him to leave. Dry pushed defendant into the door, again

 demanding money. A fight ensued. Defendant ran to his bedroom, retrieved his

 handgun, pointed it at Dry, and again told him to leave. When Dry subsequently

 charged at defendant, defendant shot Dry twice in the chest. Dry died from the

 wounds. In light of these undisputed facts, defendant’s trial largely revolved around

 a single issue: whether defendant’s killing of Dry was justified under his right to self-

 defense.
 STATE V. BENNER

 2022-NCSC-28

 Hudson, J., dissenting

¶ 40 At trial, defendant requested that the trial court instruct the jury regarding

 his right to self-defense using N.C.P.I. – Crim. 308.10. In pertinent part, this

 instruction informs the jury that:

 If the defendant was not the aggressor and the defendant
 was [in the defendants own home][,] . . . the defendant
 could stand the defendant’s ground and repel force with
 force regardless of the character of the assault being made
 upon the defendant.

 N.C.P.I. – Crim. 308.10 (emphasis added). However, the trial court determined that

 defendant was not eligible for this instruction because: (1) N.C.G.S. § 14-51.4(1), one

 of the statutes from which defendant’s requested jury instruction is derived, states

 that “th[is] justification . . . is not available to a person who . . . [w]as attempting to

 commit, committing, or escaping after the commission of a felony”; and (2) defendant,

 at the time of the shooting, was “committing” the felony of being a felon in possession

 of a firearm. Instead of the requested instruction, the trial court instructed the jury

 in accordance with N.C.P.I. – Crim. 206.10. The trial court instructed:

 The defendant would be excused of first degree murder and
 second degree murder on the grounds of self defense if, first,
 the defendant believed it was necessary to kill the alleged
 victim in order to save the defendant from death or great
 bodily harm and, second, the circumstances as they appeared
 to the defendant at the time were sufficient to create such a
 belief in the mind of a person of ordinary firmness.

 In determining the reasonableness of defendant’s belief, you
 should consider the circumstances as you find them to have
 existed from the evidence, including the size, age and strength
 of the defendant as compared to the alleged victim, the
 STATE V. BENNER

 2022-NCSC-28

 Hudson, J., dissenting

 fierceness of the assault, if any, upon the defendant, and
 whether the alleged victim had a weapon in the alleged
 victim’s possession.

 The defendant would not be guilty of any murder or
 manslaughter if the defendant acted in self defense and the
 defendant did not use excessive force under the
 circumstances.

 A defendant does not have the right to use excessive force. A
 defendant uses excessive force if a defendant uses more force
 than reasonably appeared to the defendant to be necessary at
 the time of the killing. It is for you, the jury, to determine the
 reasonableness of the force used by the defendant under all of
 the circumstances as they appeared to the defendant at the
 time.

 Furthermore, the defendant has no duty to retreat in a place
 where the defendant has a lawful right to be. The defendant
 would have a lawful right to be in the defendant’s home.
 Therefore, in order for you to find the defendant guilty of first
 degree murder or second degree murder, the State must prove
 beyond a reasonable doubt, among other things, that the
 defendant did not act in self defense.

 (Emphases added). Based on this instruction, the jury found defendant guilty.

¶ 41 On defendant’s subsequent appeal, the Court of Appeals agreed with the trial

 court that defendant’s ongoing felony—possessing a firearm as a felon—disqualified him

 from receiving jury instructions under N.C.P.I. – Crim. 308.10. State v. Benner, No.

 COA19-879, 2021 WL 978796 (N.C. Ct. App. Mar. 16, 2021) (unpublished). Specifically,

 the Court of Appeals relied on its previous decision in State v. Crump, 259 N.C. App. 144

 (2018), rev’d on other grounds, 376 N.C. 375 (2020), that “the absence of a plain and

 explicit causal nexus [between the felony and the subsequent self-defense claim]

 enunciated in section 14-51.4(1) makes manifest that the General Assembly omitted it
 STATE V. BENNER

 2022-NCSC-28

 Hudson, J., dissenting

 purposefully and intended to limit the invocation of self-defense in this instance solely to

 the law-abiding.” Id. at 151. Noting that it was “bound by Crump,” the Court of Appeals

 ruled that the trial court did not err by declining to instruct the jury under N.C.P.I. –

 Crim. 308.10. Benner, 2021 WL 978796, at *4.

¶ 42 Notably, though, in the time since the Court of Appeals ruled on this case

 below, this Court in State v. McLymore explicitly overruled Crump’s holding that the

 felony disqualifier within N.C.G.S. § 14-51.4(1) does not require a causal nexus. 2022-

 NCSC-12, 14. Rather, we held that N.C.G.S. § 14-51.4(1) “requires the State to prove

 an immediate causal nexus between a defendant’s attempt to commit, commission of,

 or escape after the commission of a felony and the circumstances giving rise to the

 defendant’s perceived need to use force.” Id. ¶ 1.

¶ 43 In light of McLymore, and because there is no causal nexus between

 defendant’s possession of a firearm as a felon and the events giving rise to his need

 to exercise self-defense, it is clear that contrary to the rulings of the trial court and

 the Court of Appeals, defendant was not disqualified by N.C.G.S. § 14-51.4(1) from

 the justifications for defensive force enacted under N.C.G.S. §§ 14-51.2 and 14-51.3.

 Furthermore, the only reason that the trial court and the Court of Appeals provided

 for refusing to give defendant’s requested instruction was that he was disqualified by

 N.C.G.S. § 14-51.4(1). In my view, defendant’s request for a jury instruction reflecting

 those rights under N.C.P.I. – Crim. 308.10 was proper and should have been granted.
 STATE V. BENNER

 2022-NCSC-28

 Hudson, J., dissenting

 Accordingly, the critical question here is whether “the instructions given by the trial

 court adequately convey the substance of defendant’s proper request.” State v.

 Godwin, 369 N.C. 604, 613 (2017) (cleaned up) (quoting State v. Green, 305 N.C. 463,

 477 (1982)).

¶ 44 The majority answers this question in the affirmative: “the trial court included

 the substance of the instruction upon which defendant’s challenge to the Court of

 Appeals’ decision rests in the remainder of its instructions to the jury.” Specifically,

 although the trial court plainly did not instruct the jury on defendant’s right to repel

 force with force “regardless of the character of the assault[,]” the majority interprets

 this Court’s use of that expression in State v. Francis, 252 N.C. 57 (1960), as

 “intend[ing] to make it clear that there was no distinction between a simple and

 felonious assault in determining whether a defendant in his own home had a duty to

 retreat before exercising the right of self-defense in his own home.”1 “For that

 reason,” the majority continues, “a trial court need not use [that] expression . . . in

 the absence of a concern that the jury would believe that the nature of the assault

 that the victim had made upon the defendant had some bearing upon the extent to

 which a defendant attacked in his own home has a duty to retreat before exercising

 1 Notably, neither the trial court nor the Court of Appeals relied upon or even
 mentioned State v. Francis, 252 N.C. 57 (1960), in their reasoning supporting the denial of
 defendant’s jury instruction request; they relied only upon the felony disqualifier under
 N.C.G.S. § 14-51.4(1) which, for the reasons noted above, is now inapplicable here.
 STATE V. BENNER

 2022-NCSC-28

 Hudson, J., dissenting

 the right of self-defense.” Accordingly, because “the trial court [here] clearly informed

 the jury that defendant had no duty to retreat before exercising the right to defend

 himself in his own home,” the majority concludes that the trial court “did not need to

 further clarify that defendant was entitled to exercise the right of self-defense

 ‘regardless of the character of the assault.’ ”

¶ 45 I understand Francis differently and accordingly would reach a different

 conclusion. In Francis, the trial court instructed the jury that

 in determining the degree of force one may use [in self-
 defense], the law permits a person to use such force as
 reasonably necessary to protect himself, and he can even
 go to the extent of taking human life where it is necessary
 to save himself from death or great bodily harm, but if he
 uses more force than is reasonably necessary he is
 answerable to the law.

 252 N.C. at 59. This instruction essentially recognized a right to proportional self-

 defense: the defendant would be justified in using deadly force in his home or place

 of business only if facing potentially deadly force himself.

¶ 46 On appeal, this Court determined that this portion of the jury instruction was

 erroneous because it “virtually eliminates the defendant’s right of self-defense since

 he used a pistol in connection with defending himself against a simple assault.” Id.

 “Ordinarily,” we reasoned, “when a person[ ] who is free from fault in bringing on a

 difficulty[ ] is attacked in his own dwelling, . . . the law imposes upon him no duty to

 retreat before he can justify his fighting in self-defense,—regardless of the character
 STATE V. BENNER

 2022-NCSC-28

 Hudson, J., dissenting

 of the assault.” Id. (quoting State v. Pennell, 231 N.C. 651, 654 (1950)).

¶ 47 Where the majority above narrowly interprets this reasoning to indicate that

 the emphasized language was only “intended to make it clear that there was no

 distinction between a simple and felonious assault in determining whether a

 defendant had a duty to retreat in his own home[,]” I understand it to more broadly

 emphasize a defendant’s right to engage in nonproportional self-defense within his

 home—that is, “he can justify his fighting in self-defense . . . regardless of the

 character of the assault.” Francis, 252 N.C. at 59. Under this interpretation,

 instructing a jury that a defendant has no duty to retreat, which the trial court

 functionally did here, is plainly not the same as instructing a jury that a defendant

 may use force of a character different from that used by an attacker in repelling an

 attack in his home, which it did not.

¶ 48 Instead, the trial court here made the same misstep that the Francis Court

 ruled erroneous: it instructed the jury that the defendant’s right to use deadly force

 in self-defense was contingent upon a reasonable belief that such force was necessary

 “in order to save the defendant from death or great bodily harm.” It further instructed

 that the reasonableness of this belief depended on the essential proportionality of

 defendant’s response in light of “circumstances . . . from the evidence, including the

 size, age and strength of the defendant as compared to the alleged victim, the

 fierceness of the assault, if any, upon the defendant, and whether the alleged victim
 STATE V. BENNER

 2022-NCSC-28

 Hudson, J., dissenting

 had a weapon in [his] possession.” In doing so, just as in Francis, the trial court’s

 “instruction virtually eliminate[d] the defendant’s right of self-defense since he used

 a pistol in connection with defending himself against a simple assault.” Id. I would

 hold that this constituted error.

¶ 49 Ultimately, though, while Francis helps inform the outcome here, it is not

 dispositive. Indeed, neither the trial court nor the Court of Appeals mentioned

 Francis in their analysis supporting the denial of defendant’s requested jury

 instruction; they relied exclusively on the no longer viable reading of N.C.G.S. § 14-

 51.4(1)’s felony disqualifier as discussed by the Court of Appeals in Crump. See

 McLymore, 2022-NCSC-12, ¶ 14 (overruling Crump’s interpretation of the felony

 disqualifier and requiring a causal nexus). Instead, the critical question here is

 simply whether or not the given instructions “adequately convey[ed] the substance of

 defendant’s proper [jury instruction] request.” Godwin, 369 N.C. at 613 (quoting

 Green, 305 N.C. at 477). To answer this question, we need only compare the substance

 of the requested instruction—which, as noted above, defendant was entitled to in

 light of McLymore—with that of the given instruction.

¶ 50 Here, the given instruction omitted a key justification for defensive force

 enacted under N.C.G.S. §§ 14-51.2 and 14-51.3 as integrated into the requested

 instruction: that “defendant could stand [his] ground and repel force with force

 regardless of the character of the assault being made upon [him].” N.C.P.I. – Crim.
 STATE V. BENNER

 2022-NCSC-28

 Hudson, J., dissenting

 308.10 (emphasis added). Although we agree with the majority that the trial court’s

 instruction that defendant had “no duty to retreat” is functionally the same as an

 instruction that defendant “could stand [his] ground,” the given instruction still

 excludes a key element from N.C.P.I. – Crim. 308.10: instructing the jury that

 defendant’s right to self-defense in his home operated “regardless of the character of

 the assault.” Because the inclusion or omission of this phrase unilaterally determines

 whether or not defendant was justified in using a handgun to defend himself against

 Dry’s physical attack on him, its omission by the trial court constitutes a meaningful

 substantive difference between the requested and given instructions. Accordingly, I

 would hold that the trial court and Court of Appeals erred below.

¶ 51 Further, I disagree with the majority that defendant has failed to establish

 that this error was prejudicial. Because defendant admitted that he shot Dry, the

 only question for the jury to resolve here was whether defendant’s actions were

 justified. By failing to give the defendant’s requested instruction, the trial court’s

 error bore on the only issue that the jury had to decide. Specifically, the jury

 instruction that was given limited the scope of what the jury could consider in

 determining whether defendant had the right to use deadly force even if it had not

 been wielded against him. In determining whether defendant’s use of deadly force

 was justified, under the proper instruction, the jury would not necessarily need to

 consider whether Dry used a weapon, the nature of his assault on defendant, or his
 STATE V. BENNER

 2022-NCSC-28

 Hudson, J., dissenting

 age, strength, or size. These factors directly speak to “the character of the assault

 being made upon defendant,” which, under the proper instruction, would be

 irrelevant. Because the two instructions are clearly distinct, I would hold that the

 error was clearly prejudicial.

¶ 52 Finally, because I would find that the prejudicial error noted above

 independently requires reversal and remand, I would not reach the second issue

 regarding defendant’s preservation of the instruction on the presumption of

 reasonable fear.

¶ 53 Accordingly, I respectfully dissent.

 Justice EARLS joins in this dissenting opinion.